No. 81-198

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

IN RE THE MARRIAGE OF
DENNIS P. CORBETT,

                    Petitioner and Respondent,

     vs.

SUSAN M. CORBETT,

                    Respondent and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
               In and for the County of Flathead
               Honorable James M. Salansky, Judge presiding.

Counsel of Record:

    For Appellant:

        Morales, Volinkaty & Harr, Missoula, Montana

    For Respondent:

        Robert B. Allison, Kalispell, Montana
        Daley, Sherlock & Nardi, Kalispell, Montana

---

Submitted on briefs: October 1, 1981

Decided: NOV 12 1981

Filed: NOV 12 1981

*Thomas J. Kearney*
_____
              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by Susan M. Corbett Adler, the mother of two children, from an order granting her ex-husband Dennis P. Corbett's motion for a modification of the divorce decree which changed the custody of two minor children from the mother to the father and denied her counterpetition for a modification seeking additional child support.

The issues before this Court are:

1. Whether the District Court applied the correct standards in making its decision to grant respondent's petition for a change of custody?

2. Whether, even if the District Court applied the correct standards in making its decision to grant the respondent's request for a change of custody, there was sufficient evidence to support that decision?

The parties to this action were married on October 26, 1968, at Ronan, Montana. Two children were born of the marriage--namely, James Patrick Corbett, born March 25, 1969, and Christine Marie Corbett, born April 17, 1972. The marriage was dissolved February 14, 1977, by the Honorable James M. Salansky, who is also the presiding judge in this modification proceeding. A property settlement agreement executed by the parties was incorporated in the decree of dissolution. In that agreement, and in the decree of dissolution, the mother was granted the care, custody and control of the two minor children with the father to have certain visitation rights.

It should be noted that at the time the original ruling was made, the court had a report submitted by Tom

Best, the director of family court services, on his investigation and recommendations. Best recommended Susan be awarded custody based upon the assumptions that Dennis was not in a position at that time to serve as a single parent and that Susan would move to Nashua, Montana, where she would reside with a brother on his ranch and would have his assistance in supervision of the children as well as continuous employment on the ranch. Best, in his report, recommended that temporary custody be placed in Susan so the court in Flathead County could maintain some control over the custody. One of the reasons given in his testimony concerning the temporary custody at the time of the original divorce was that Susan had been seriously injured in an automobile accident in 1969 and since that time had suffered a partial disability due to traumatic brain damage and had been subject to periodic epileptic seizures.

The record indicates Susan resided only briefly with her brother in Nashua. She then returned with her children to her home community of Charlo, Montana, where she was residing at the time of the hearing.

The court noted in its findings of fact that ordinarily evidence of events and situations existing prior to the dissolution were inadmissible. In view of the above factors, however, the court determined the background would demonstrate the reasons for the original custody arrangement and deemed it relevant to the proceedings on custody modification. The evidence indicates Susan frequently left the children at home unattended during the years she had custody of them. In addition, several times when the children were with her Susan had some type of seizure and either had an

automobile accident or was prevented from having one by the children in the car. There also was testimony, although controverted, that Susan had a problem of alcohol abuse that required treatment which she had either refused or had not obtained. She admitted that on a number of occasions she left the children unattended while she went to the bars to drink. Susan did submit to an evaluation by the Comprehensive Alcoholic Program in Ronan during these proceedings. She admitted having drinking episodes but denied she had an alcohol problem or was suffering any illness from alcohol abuse.

During the summer of 1980, the children were with their father, Dennis, and his new wife. They returned to their mother in Charlo on approximately August 4 to get ready to go to school according to the parties' predissolution agreement. After having the children and observing them during the summer vacation, Dennis and his wife determined it was necessary to request a modification of the divorce decree and to obtain custody of the two children.

The first hearing was held on August 29, 1980. Susan appeared pro se. Also present was an attorney who had been appointed by the court to appear for the children. Testimony was presented indicating the nature of Susan's problems including the epileptic seizures and the fact that money had been sent to the children by various members of their father's family but which they never received. Susan admitted she had used the money for other purposes. One check sent by a relative had been cashed at a tavern in Charlo. Susan introduced evidence that because there was no

bank in Charlo, the bar was one of the few places where a check could be cashed.

At the hearing, rebuttal testimony was presented concerning several calls made to Dennis and his wife, Linda, by David Adler, a friend of Susan, late in June 1980. During these telephone calls Adler told Dennis and Linda that Susan was an alcoholic, an unfit mother, left the children unattended, beat them with a belt, and that he also was an alcoholic. He offered to assist Dennis with legal fees to get the children away from Susan.

Based on testimony at the hearing on August 29, the court granted temporary custody of the children to Dennis, requested that Susan be evaluated, and scheduled a full hearing on October 2, 1980. Counsel for Susan appeared on her behalf on September 11, 1980, and filed a motion for a modification and a counterpetition.

At the October 2 hearing a number of additional witnesses were called by both parties. Thomas Best, the director of family court services, explained to the court why he had made his recommendations at the time of dissolution. He indicated that, in his opinion, "school is the best window of how the children are performing" in any given family situation. There was testimony by the principal of the Charlo school indicating that while both of the Corbett children were bright and had good school records, their grades had deteriorated during the last school year.

David Adler, who had married Susan on July 15, 1980, testified that he had been drunk when he made the June telephone calls to Dennis accusing Susan of being unfit and

an alcoholic. He stated that he had made the calls because he had quarreled with Susan and he was using the children as a pawn against the mother. At the October 2 hearing he testified that he did not feel Susan was a poor mother or an alcoholic, and he disavowed the things he said about her during the telephone calls.

Both issues presented for review will be considered as one in our discussion upholding the action of the District Court. Section 40-4-219, MCA, sets forth the standards and guidelines in considering a motion to modify custody. Three subsections define when a change of custody can be granted: (a) the custodian agrees to the modification; (b) the child has been integrated into the family of the petitioner with the consent of the custodian; or (c) the child's present environment endangers seriously his physical, mental, moral, or emotional health, and harm likely to be caused by a change of environment is outweighed by the advantages to him.

Subsection (a) is not at issue here because there is no agreement for a modification. Nor is subsection (b) at issue here. Appellant argues the judge mistakenly took the fact that the children were with their father for the summer visitation and later for approximately a month under the court's temporary custody to constitute an intergration into the father's home with the consent of the custodian. That is not what the district judge found. Nothing in his findings of fact and conclusions of law apply subsection (b) in this matter. This Court has previously ruled in Weber v. Weber (1978), 176 Mont. 144, 576 P.2d 1102, that summer visitation does not constitute integration into the

noncustodial parent's family. What the District Court actually found here was that the children had adapted well to their father's home.

This leaves us with the District Court's application of subsection (c) in changing the custody. That subsection, as noted above, requires the court to find upon the basis of facts there has been a change of circumstances since the original custody decree and that the modification is necessary in the best interests of the children. The statute also requires that the court find the child's present environment seriously endangers his physical, mental, moral or emotional health and that the harm likely to be caused by the change of environment is outweighed by the advantages to the child making the change. Here, the court found there was a change of circumstances; the court found an endangerment; the court found the harm likely to be caused by the change was outweighed by the advantages to the children and such change was in their best interests. The court applied the correct standards in making its decision, and we can find no abuse of discretion.

This Court has said many times regarding the discretion of the District Court in child custody cases that:

> "In reviewing orders which affect the custody of the child, this Court is mindful that the primary duty of deciding the proper custody of children is a task of the District Court. Thus, all reasonable presumptions as to correctness of that determination will be made. No ruling will be disturbed absent a clear showing that the District Court's discretion was abused." Foss v. Leifer (1976), 170 Mont. 97, 550 P.2d 1309, 1311.

Here the court made extensive findings that are clearly supported by the evidence, and we find no abuse of

discretion.  The decision of the District Court is affirmed.

 

                                          Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices