No. 81-395

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IN RE THE MARRIAGE OF

MARTHA H. BURLEIGH,

       Petitioner and Respondent,

  -vs-

C. WARD BURLEIGH,

       Respondent and Appellant.

---

Appeal from: District Court of the Tenth Judicial District,
In and for the County of Fergus, The Honorable
Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert L. Johnson, Lewistown, Montana

    For Respondent:

        Anderson, Edwards & Molloy, Billings, Montana

    Amicus Curiae:

        Jardine, Stephenson, Blewett & Weaver, Great Falls,
        Montana

---

Submitted on Briefs:  July 9, 1982

Decided: August 19, 1982

Filed: AUG 19 1982

*Thomas J. Kearney*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Husband appeals from a judgment entered by the District Court of the Tenth Judicial District, Fergus County, which awarded the wife child support and custody of the children and required the husband to make a lump sum payment plus twenty annual payments of $11,116 to the wife. We affirm.

Husband and wife were married on January 8, 1966, in Fort Collins, Colorado. Husband was completing his studies for a Doctor of Veterinary Medicine degree, and wife was in her senior year of undergraduate school studying history. The couple then made several moves for the husband's employment, first to Utah where the husband was employed at a private veterinary clinic and the wife worked part-time as a receptionist. The parties then moved to Lewistown and, during the first months of 1967, lived with the husband's parents on Burleigh Angus Ranch and shared ranch and household duties.

In March 1967 they moved to Miles City, where husband was employed as a deputy state veterinarian and wife attended school, received her bachelor's degree and did some substitute teaching. In September of 1968, husband accepted employment with a private veterinarian in Sidney, and wife taught school from October to the end of the school year.

In the summer of 1969 the parties moved back to Lewistown where husband was employed by a private veterinarian and wife taught school. Both parties helped on the ranch part-time. In 1970 and 1971, wife experienced child-bearing problems requiring out-of-state chemotherapy which prevented her from contributing to the home and marriage as

much as she previously had. In 1972 the husband gave up his veterinary practice, and the parties moved into the main ranch house on Burleigh Angus Ranch. Part of the wife's duties included keeping records on the Angus cattle and operating a public dumpyard acquired by the ranch.

In September 1973, the parties adopted a three-month-old son, Theran. Husband's parents gifted thirty shares of stock to the husband during this year. On February 10, 1975, all shareholders entered a buy and sell agreement which contained provisions which disallowed any encumbering or disposing of the stock without the consent of the remaining shareholders and statements to the effect that a stockholder may not dispose of any shares without first offering them to the corporation. This agreement has been twice amended. In July 1975 the parties had a child of their own, Sarah. During 1975 husband's parents gave him twenty more shares of stock in the corporation and gave wife twenty shares also.

On April 1, 1978, husband contracted to buy 274 treasury shares of the corporation and also contracted to buy 230 shares from his parents. He had been gifted forty-six shares prior to marriage. After the parties moved to Lewistown, the wife was active in working with horses, in raising and selling dogs and in continuing to take educational courses.

In September 1979 the parties separated, and on October 29, 1979, wife filed a complaint seeking dissolution of the marriage. On January 10, 1980, on oral stipulation of the parties, the District Court dissolved the marriage, awarding temporary custody of the children to the wife.

Both parties subsequently remarried.

On August 4, 1981, the District Court awarded permanent custody to the wife with rights of visitation to the husband and gave the wife $400 per month in child support. The District Court also found that the wife's share of the marital estate was $247,320.26, with $25,000 to be paid within sixty days of the date of judgment and the balance to be paid in twenty annual installments of approximately $11,116 each. The court granted the wife a security interest in the husband's stock until full payment was made at which time the wife would convey her twenty shares to the husband. Husband appeals and presents several issues which can be stated as follows:

1. Did the District Court err in awarding custody of the children to the wife?

2. Did the District Court err in making its award of child support?

3. Did the District Court err in distributing the marital estate?

Both parties cite Corbett v. Corbett (1981), ___ Mont. ___, 635 P.2d 1319, 38 St.Rep. 1852, as setting our standard of review on the first issue. In Corbett we stated:

> "This Court has said many times regarding the discretion of the District Court in child custody cases that:
>
> "'In reviewing orders which affect the custody of the child, this Court is mindful that the primary duty of deciding the proper custody of children is a task of the District Court. Thus, all reasonable presumptions as to correctness of that determination will be made. No ruling will be disturbed absent a clear showing that the District Court's discretion was abused.' Foss v. Leifer (1976), 170 Mont. 97, 550 P.2d 1309, 1311." 635 P.2d

-4-

at 1322, 38 St.Rep. at 1856.

Section 40-4-212, MCA, is the controlling statute here and states as follows:

> "Best interest of child. The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:
>
> "(1) the wishes of the child's parent or parents as to his custody;
>
> "(2) the wishes of the child as to his custodian;
>
> "(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> "(4) the child's adjustment to his home, school and community; and
>
> "(5) the mental and physical health of all individuals involved."

The District Court's finding in this regard stated thus:

> "The Court finds that both parties are fit and proper parents, and further finds that the best interests of the minor children require that they be placed in the care, custody and control of their mother. The Court considers the following relevant in making this determination:
>
> "1) That neither child has reached an age where his wishes are relevant in this determination, further, both parents expressed a strong desire to acquire custody; accordingly, the desires of the parties and the children do not enter into this decision;
>
> "2) The testimony established that the mother is, and has been, the primary person involved in the care, education and rearing of the children since their birth. The mother's present living situation is such that it facilitates the kind of care and attention required by children of this age. The evidence established that the children are well settled to the current living situation and their progress in school is satisfactory;
>
> "3) The mental and physical health of all individuals is satisfactory;

-5-

"4) In summary, the Court finds no evidence of positive values to be gained by changing their custody from the current status, wherein their primary custody and care rests with their mother. To the contrary, the Court finds that the best interests of the children require the continuation of the current custody status with the mother."

Appellant charges that the court's findings do not properly address the children's interaction with other people in the mother's home including respondent's new husband. Appellant also contends that the husband should have been awarded custody because he fulfilled all the criteria of section 40-4-212, MCA, based largely on his testimony and that of a social worker who visited the husband's home.

We disagree. Montana law states that the findings do not need to be in any particular form if there is substantial credible evidence to support the trial judge's judgment on the merits. In Re Marriage of Barron (1978), 177 Mont. 161, 580 P.2d 936. There is substantial evidence in the record to support the court's conclusion here.

The two children had lived with the mother since the separation in September 1979, and the husband testified that the wife was a satisfactory mother. Furthermore, the social worker had only visited the husband's home, and not the wife's, so could not testify that the wife's home was not a suitable home for the children. While we may sympathize with the husband's wishes to have a more direct influence on the rearing of his children, we do not find any abuse of discretion which would warrant a reversal. Corbett, supra.

With regard to the second issue, appellant argues that there is no finding to suggest that the court considered the statutory criteria set forth in section

40-4-204, MCA, in awarding the wife child support payments of $200 a month per child. Husband further argues that the requirements of the District Court's judgment obligate him to pay out far more each year than he has ever received in income.

Section 40-4-204, MCA, provides:

"Child support. In a proceeding for dissolution of marriage, legal separation, maintenance, or child support, the court may order either or both parents owing a duty of support to a child to pay an amount reasonable or necessary for his support, without regard to marital misconduct, after considering all relevant factors including:

"(1) the financial resources of the child;

"(2) the financial resources of the custodial parent;

"(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

"(4) the physical and emotional condition of the child and his educational needs; and

"(5) the financial resources and needs of the noncustodial parent."

Here the District Court judge had before him the wife's testimony regarding the financial needs of her children, which included housing, groceries and transportation. The wife testified that she needed $600 per month for two children, and, in our view, an award of $400 per month is not excessive in any way.

Nor are we persuaded that the District Court's judgment will so strap the husband that he cannot make the payments. Both the husband and the ranch accountant testified that the corporation pays and provides nearly all the husband's living expenses, including his house, food, utilities and transportation. The corporate salaries are adjusted

according to the income received each year. The husband's salary in 1978 was $22,850 and in 1979 was $27,866. There is ample evidence to support an award of $400 per month in child support.

Appellant's third issue relates to the District Court's distribution of the marital estate. Appellant argues that the findings should not have included in the marital estate the 120 shares gifted to the husband after the marriage. Appellant also contends that the husband should have been credited for the nearly $25,000 that he paid to the wife after their separation and prior to her remarriage.

Both appellant's brief and the amicus brief (representing the other shareholders) argue that the court's valuation of the shares was improper and that the granting of a security interest was contrary to the various agreements of the shareholders.

In Montana we pay a great amount of deference to the judgment of the District Court regarding property divisions, i.e., our standard of review is whether the District Court acted arbitrarily without employment of conscientious judgment, or exceeded the bounds of reason in view of all the circumstances. Zell v. Zell (1977), 174 Mont. 216, 570 P.2d 33.

In In Re Marriage of Jorgensen (1979), 180 Mont. 294, 590 P.2d 606, this Court considered the valuation of stock of a closely held corporation where the shares could only be sold to other shareholders or to the company. A shareholder agreement set the price of each share at $750, and we found that the District Court did not abuse its discretion in

valuing the shares at $750. Here, under the provisions of the buy and sell agreement and amendments thereto, the price of each share shall be book value (as shown by the balance sheet at the close of the preceding tax year) or a different valuation can be established by an independent appraiser.

Under the book value method, each share of Burleigh Angus Ranch would be worth $158.37 which, in view of the evidence, is unrealistically low. Husband estimated that each share was worth about $500. The District Court valued each at $1,009.72, a figure reached by dividing the value of total assets less liabilities by the number of outstanding and issued shares. We cannot say that the District Court acted arbitrarily or that the method employed exceeded the bounds of reason in view of the circumstances, _Zell_, supra, and we uphold it here.

We can similarly dispose of the husband's contention that the District Court should have made a distribution of the stock in kind, i.e., that the wife should have been given some of the shares instead of the right to annual payments. Simply because this option was open to the court is no reason that the district judge had to select it. Under the circumscribed standard of review established by _Zell_ and numerous other cases, there was no error in the District Court's failure to distribute the property in kind. Furthermore, we note that the District Court did not award the wife 50 percent of the net marital estate, but only 38 percent because of the gifts the husband had received before and during the marriage.

Nor do we predicate error on the District Court's granting the wife a security interest in the 720 shares of

the husband's stock. She needs some protection to insure that the annual payments will be made, and the prospect of foreclosure on those shares should provide a sufficient incentive for the husband to make the installment payments. We have previously approved the granting of a security interest for the wife's protection in other cases, In Re Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361. We also note that, under the terms of the District Court decree, the wife cannot unreasonably withhold consent to the husband's encumbering his stock or selling corporate land.

The parties here disagree on whether the husband has the voting rights to a majority of the stock in the corporation. There are 1,479 outstanding shares, and it is uncontested he has voting rights to 510 shares. The bone of contention here is whether the husband has the voting rights to the 230 shares being sold to him by his parents, which would make him a majority shareholder. Appellant and the amicus brief argue that since the certificates are still in the parents' names, they retain the voting rights. Based on the record before us, we cannot agree. The crucial language in the contract wherein the husband is buying the stock from his parents is as follows:

> ". . . Purchaser shall have the right to enjoy all rights and incidents of ownership of the 230 shares of stock, subject only to such restrictions as have been placed upon the Purchaser by the Sellers under the terms of this agreement." (Emphasis added.)

Nowhere in the contract do we find any reservation of voting rights by the parents, and we thus conclude that the husband has the right to vote a majority of the stock of the corporation. The security interest granted to the wife will help ensure that the husband does not use his corporate control

-10-

to jeopardize her interest.

Finally, husband argues he should have been given credit for the approximately $25,000 that he paid to the wife after their separation and before her remarriage. We disagree. We have previously held that living expenses of the wife need not be credited to the husband in the distribution and computation of the marital estate, In Re Marriage of Caprice (1978), 178 Mont. 455, 585 P.2d 641, and we so find here.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices