No. 85-364

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

IN RE THE MARRIAGE OF
JANET MARIE WESSEL,

        Petitioner and Respondent,

   and

LESTER FAY WESSEL,

        Respondent and Appellant.

---

APPEAL FROM: The District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        W.G. Gilbert, Jr., W.G. Gilbert, III and Thomas R.
Scott, Dillon, Montana

    For Respondent:

        Berg, Coil, Stokes & Tollefsen; Michael C. Coil,
Bozeman, Montana

---

Submitted on Briefs: Dec. 5, 1985

Decided: March 4, 1986

Filed: MAR 4 - 1986

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by the husband from a judgment of the District Court of the Fifth Judicial District, Madison County, dividing the marital property of the parties and establishing a payment plan by which the husband was to buy out the wife's interest in the family ranch corporation. We affirm.

Janet Wessel ("Janet") and Lester Wessel ("Lester") grew up in ranching families in Madison County, Montana. They were married in 1967 and had three children, all minors at the time of trial. Nine years into their marriage, Janet and Lester, together with Lester's parents, incorporated their various ranching interests into a Sub Chapter S corporation known as the "Wessel Ranch." 1,000 shares of stock were issued to each of the four stockholders in the corporation, with Lester's parents receiving 670 shares, Lester receiving 251 shares and Janet receiving 79 shares. The corporation thereafter provided Janet and Lester with their home, all utilities, various groceries, a car, and various living necessities. Lester also received $800 as his monthly wage from the corporation.

During Lester's and Janet's marriage, Janet's father passed away. Janet's mother inherited the family ranch known as the "Wellman Ranch." As part of Janet's mother's estate planning, she gifted the ranch under an annuity plan to Janet and her sister with each receiving a one-half interest in the ranch.

After seventeen years of marriage, Janet petitioned to have her marriage with Lester dissolved. Janet subsequently purchased a mobile home to live in with her children using

funds loaned from the Wessel Ranch corporation. Janet also started working at a local bakery, netting approximately $115 per week.

The Madison County District Court, after a trial held December 13 and 14, 1984, dissolved the marriage of the parties. In its judgment dated February 21, 1985, the District Court ordered, in relevant part to this appeal, that all of the stock owned by the parties in the Wessel Ranch shall be divided so that Lester and Janet each receive 165 shares. Further, Lester was given the option of purchasing Janet's 165 shares of stock at $800 per share for a total of $132,000, less a $15,000 credit for his assumption of Janet's mobile home loan.

The judgment further provided that if Lester failed to exercise the purchase option regarding Janet's shares of stock by October 1, 1985, he was to execute and deliver to Janet a promissory note for the principal sum of $117,000. The note was to be dated March 5, 1985, and to provide for equal annual payments, amortized at 8% interest over a period of 30 years (approximately $10,300 per year), with a final balloon payment due on March 5, 1995. The note was to provide for the right of pre-payment and was to be secured with Lester's shares of stock in the Wessel Ranch. The first annual payment on the note is due on March 5, 1986.

The judgment also provided that Janet's one-half interest in her family ranch ("Wellman Ranch") being gifted to her from her mother under an annuity plan, was not part of the marital estate and therefore not subject to any marital claim.

In addition, the District Court ordered the following, although Lester does not specifically object to these items

3

except as they relate to his ability to pay Janet for her shares of stock in the Wessel Ranch:

1. The parties were awarded joint custody of the children with Janet having physical custody of the two youngest children and Lester having to pay Janet $300 per month in child support. Lester was awarded custody of the oldest child and is responsible for his support.

2. Lester shall provide medical insurance for all three children.

3. Lester shall assume the $15,000 loan on Janet's mobile home.

4. The parties' credit card and bank loans shall be shared equally by Janet and Lester.

5. Lester shall assume the loan on Janet's car.

It should also be noted that although at the time of trial the net worth of the Wessel Ranch exceeded $1,000,000, the record indicates the ranch is currently suffering some financial difficulties. The record shows the ranch is overburdened with operating debt, and the generally distressed agricultural economy shows little prospect of immediate relief for the ranch. Also, the dissolution of the parties' marriage has compounded the ranch's credit situation.

Lester basically presents the following issues for review by this Court:

(1) Did the District Court abuse its discretion by ordering Lester to buy Janet's shares of stock in the family ranch corporation?

(2) Did the District Court abuse its discretion by excluding from the marital estate ranch property gifted to Janet by her mother?

4

(3) Is the evidence adequate to support the District Court's Findings of Fact and Conclusions of Law?

Under the first issue, Lester basically concedes that the judgment of the District Court ordering him to buy Janet's shares of stock in the Wessel Ranch is appropriate, but he argues that the judgment should be modified to provide for a lower annual payment without interest. Lester argues in light of the financial condition of the ranch, neither he nor the ranch have the assets or funds to pay the sums to Janet mandated by the District Court. Specifically, Lester argues the District Court disregarded the rule of In Re Marriage of Jacobson (1979), 183 Mont. 517, 525, 600 P.2d 1183, 1187-88, which states:

> It must be remembered that the primary right to be considered in disposing of marital property is the right of each party to an equitable apportionment of the marital assets. While it is the policy of the courts of this state to avoid splitting up a ranch or forcing its sale where there is any reasonable alternative, that policy, however commendable, cannot be used to override the wife's right to an equitable share of the marital property. (Emphasis added.)

Lester argues there was no "equitable apportionment of the marital assets" by the District Court because it is not financially possible for him or the ranch to satisfy the requirements of the judgment. We disagree.

First, it must be noted that the District Court has the discretion during a marriage dissolution to determine what method of payment is best suited for dividing up the parties' respective interests in a family ranch corporation. For example in Burleigh v. Burleigh (1982), 200 Mont. 1, 650 P.2d 753, this Court held that in place of awarding actual shares of stock to the wife, the District Court can award annual

5

payments to the wife as payment for her shares of stock held in a family ranch corporation.

> We can similarly dispose of the husband's contention that the District Court should have made a distribution of the stock in kind, i.e., that the wife should have been given some of the shares instead of the right to annual payments. Simply because this option was open to the court is no reason that the district judge had to select it. Under the circumscribed standard of review established by Zell and numerous other cases, there was no error in the District Court's failure to distribute the property in kind.

Burleigh, 650 P.2d at 757.

Therefore, because Burleigh supports the District Court's method of paying Janet for her shares of stock in the Wessel Ranch, the only question remaining is whether the size of the annual payments and the interest rate chosen by the District Court are proper or if they are an abuse of discretion which requires reversal.

While Lester strongly argues that no interest should be charged on any annual payments he will make to Janet, this Court has already stated that allowing interest on an amount to be paid over time is within the discretion of the District Court.

> The 7 percent interest rate is below that charged by commercial and governmental lending institutions. The case of In re Marriage of Brown (1978), Mont., 587 P.2d 361, 367, 35 St.Rep. 1733, merely suggested that the District Court could order the remaining balance paid without interest. It did not say that the trial court could not allow interest, and the allowance of interest lies within the court's sound discretion.

Jacobson, 600 P.2d at 1188.

The interest rate of 8% awarded by the District Court in this case is below the legal rate allowed by current statutory law (§ 31-1-106, MCA), and was well below the

6

market rate in effect at the time of this judgment and is also below the current market rate. Clearly such an award of interest does not result in substantial injustice and therefore was not an abuse of discretion by the District Court.

Lester's major complaint concerning the District Court's judgment is that the size of the annual payments required of him to purchase Janet's shares of stock in the family ranch corporation are too large. Lester basically argues that the evidence is insufficient to support the size of these annual payments. Specifically, Lester argues:

1. That his first year payment of all the sums due to Janet under the judgment (including child support, loans, stock payment) is nearly $25,000.

2. That he does not now have, and cannot obtain, funds to purchase Janet's shares of stock.

3. The Wessel Ranch does not now have, and cannot obtain, funds to purchase Janet's shares of stock in light of its current financial distress.

4. That Lester's parents (the majority stockholders of the Wessel Ranch) do not now have, and cannot obtain, funds to purchase Janet's shares of stock.

Lester argues, in light of the above listed items, that the payment schedule set up by the District Court will be impossible for him to meet. Therefore, Lester points out, it is highly probable that the Wessel Ranch may be forced to liquidate in order to cover the obligations the District Court has imposed upon him in favor of his ex-wife. We disagree with Lester's conclusions.

First, this Court notes that requiring a husband to buy his ex-wife out of a family business will undoubtedly always

be a financial burden. While Lester argues that he will be unable to meet this burden, the following facts presented at trial tend to counter his argument:

1. The Wessel Ranch does have a net worth of over $1,000,000 giving the stock a net worth of over $1,000 per share.

2. Considering all the benefits received by Lester through the ranching corporation (including groceries, vehicles, housing, etc. . . ), his actual annual income exceeds $20,000.

3. Lester stands to inherit the entire Wessel Ranch corporation.

Further, there is no evidence in the record that an award to Janet of one-half of the marital estate in the sum of $132,000 will require liquidation of the family ranch. There are numerous alternatives available to Lester to cover his obligation short of liquidation, and to suggest that the only alternative to satisfy his obligation is to liquidate the entire Wessel Ranch which has a net value of over $1,000,000 has little merit. Also, although Lester makes a valid argument that the ranching industry is currently suffering from hard times, the cattle business by nature is cyclical and simply because Janet has chosen to dissolve this marriage at the bottom of the cycle should not preclude her from receiving her fair share of the marital estate accumulated after 17 years of diligent effort with Lester.

Lastly, the actual size of the annual payments required of Lester are not too large. The District Court amortized the payments over thirty years and required a balloon payment on March 5, 1995. The use of a thirty year amortization schedule is not so short or so abnormal in today's financial

markets as to cause this Court to conclude that the use of the same is an abuse of discretion by the District Court.

In conclusion under this issue, while there is little doubt that the District Court's judgment requiring Lester to purchase Janet's 165 shares of stock in the Wessel Ranch is a hardship, the District Court did not abuse its discretion by using an 8% interest rate and requiring Lester to pay his obligation on an annual basis for 30 years in the sum of approximately $10,300 per year. We hold there was a "equitable apportionment of the marital assets" as required by Jacobson quoted above.

Under the second issue, Lester argues that the "Wellman Ranch" property being gifted to Janet by her mother for inheritance purposes should have been included in the marital estate. The District Court directly addressed this issue in its findings of fact and conclusions of law as follows:

> The petitioner [Janet] has acquired a one-half interest in a $360,000 parcel of property [Wellman Ranch], gifted to her from her mother under an annuity plan. While there is a claim that respondent [Lester] contributed to this separate estate in kind and by Wessel Ranch money, the contribution was not significant. This property will be considered as separate property unencumbered by any marital claim, as will respondent's potential inheritance from his father and mother.

This Court has previously addressed the question of whether property received by gift or property inherited by one of the parties is to be considered in determining the marital estate. On facts not unsimilar to those of the instant case, this Court held as follows:

> Here, respondent received her stock in Mill Creek Farm as a gift under her parents' estate planning scheme. Moreover, neither party worked on the farm except for isolated odd jobs. At

9

> trial, appellant replied "absolutely not" when asked if he felt he had made a significant contribution to the farm operation. He also agreed with counsel's remark that appellant made no claim to any interest in the family farm . . . [T]he District Court could justifiably find that appellant had no interest in respondent's stock. (Citations omitted.) We hold that there was no abuse of discretion in excluding respondent's stock from the marital estate.

Becker v. Becker (Mont. 1985), 707 P.2d 526, 528-29, 42 St.Rep. 1541, 1544.

In the instant case, Janet received her one-half interest in the Wellman Ranch belonging to her side of the family directly from her mother. Janet's mother would give Janet funds each year from lease payments on the ranch, and these funds would then be returned to Janet's mother in the form of payments for the ranch. The record indicates this complex arrangement was clearly for estate planning purposes. Further, the District Court found Janet's one-half interest in her family ranch was acquired by gift and Lester's contribution to the ranch was not significant.

Thus the facts in the instant case are very similar to the facts contained in the Becker case. In the instant case, as in Becker, the wives received their interest in the family ranch/farm as gifts directly from their sides of the family. Also in both of these cases the gifts were made for estate planning purposes. Further, the husbands in both cases did not contribute significantly to the property.

Although the District Court did not have the benefit of the Becker decision at the time it made its ruling in the instant case, it obviously followed the logic expressed in Becker very closely and did not abuse its discretion by

10

excluding Janet's interest in the Wellman Ranch from the marital estate.

The third and final issue raised by Lester is whether the findings of fact and conclusions of law of the District Court are supported by the evidence. This Court has established, through a long line of cases, the standard of review in dissolution actions. First, the standard of review is clear regarding the division of marital property.

> "In dividing property in a marriage dissolution the district court has far reaching discretion and its judgment will not be altered without a showing of clear abuse of discretion. The test of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice."

Becker, 707 P.2d at 528; citing In re Marriage of Vert (Mont. 1984), 680 P.2d 587, 41 St.Rep. 895.

Second, we note this Court will not set aside the trial court's findings of fact unless shown to be clearly erroneous.

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.
>
> Furthermore, findings of fact are not clearly erroneous if supported by substantial credible evidence.
>
> This Court's function . . . is not to substitute its judgment in place of the trier of facts but rather it is "confined to determine whether there is substantial credible evidence to support" the findings of fact and conclusions of law. [Citations omitted.] Although conflicts may exist in the evidence presented, it is the duty and function of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence. [Citations omitted.]

In Re Marriage of Obergfell (Mont. 1985), 708 P.2d 561, 563-64, 42 St.Rep. 1414, 1417-18.

We conclude, as explained in the opinion above, that the District Court did not abuse its discretion in dividing the marital property of the parties. Also, we hold there is substantial credible evidence on the record to support the findings of fact and conclusions of law of the District Court. Therefore, we affirm the District Court's distribution of the marital estate.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices