No. 86-503

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN RE THE CUSTODY OF
N.T.E., a minor child.

B. T. E.,
        Petitioner and Respondent,

        -vs-

P. S. K.,
        Respondent and Appellant.

_____

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Mineral,
               The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Karl H. Boehm, Missoula, Montana

        For Respondent:

            Sol & Wolfe; Michael Sol, Missoula, Montana

        Guardian Ad Litem:

            Douglas R. Austin, Missoula, Montana

_____

                        Submitted on Briefs: June 4, 1987

                             Decided:   July 13, 1987

Filed: JUL 13 1987

_____
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District, in and for Mineral County, Montana, involving the custody of the parties' minor child. The District Court awarded custody of the child (N.T.E.) to the father and allowed the mother certain visitation rights. Following the court's order, the mother obtained new counsel and brought a motion for new trial and to alter or amend the findings of fact, conclusions of law and order. Upon hearing the motion, the District Court denied the mother's motion for a new trial and held that the amended findings did not necessitate amending the conclusions of law or the custody order. The mother appeals the amended findings of fact, the original findings of fact not amended, the conclusions of law and custody order. We affirm.

After the birth of N.T.E., the mother became his primary caretaker because the parents did not live together. An informal visitation arrangement to enable the father to maintain his relationship with his child was agreed upon. This proved frustrating and difficult, however, and at one point the father refused to return N.T.E. to the mother. The father petitioned the District Court for temporary custody. The court through stipulation of the parties set up a schedule whereby N.T.E. would spend five nights with the father and ten nights with the mother. However, this arrangement did not work.

During the hearing on this matter, the court heard testimony regarding alcohol and drug abuse by both parents. Extensive testimony also was taken regarding abuse and neglect the mother had suffered during her childhood. The parties stipulated that home studies of each home be

conducted by the office of Social and Rehabilitation Services. A report to the court was to be made upon completion. Subsequently the court ordered psychological evaluations of both parties and a chemical abuse evaluation of the mother. Dr. Shan Guisinger, the psychologist who made the psychological evaluations, recommended that the father be designated the custodial parent and N.T.E. have liberal visitation with the mother.

The mother was not satisfied with this evaluation and was thereafter evaluated by another psychologist, Dr. Michael Scolatti. He reviewed the findings and reports of Dr. Guisinger and conducted more extensive tests regarding her personality and her use of alcohol. Dr. Scolatti ultimately disagreed with the recommendations of Dr. Guisinger in her conclusion that the father would make the better parent. The court rejected many portions of Dr. Scolatti's report and testimony which was in conflict with that of Dr. Guisinger.

The matter came to trial on May 7, 1986, and continued from time to time until June 13, 1986. Extensive evidence was presented by both parties. The District Judge ultimately decided that the father was to be the primary custodian and the mother would have visitation rights.

We will consider the following issues:

(1) Whether the order granting custody of N.T.E. to the father, under the circumstances where the child will not be residing in the father's home but in the home of the child's paternal grandparents who will be the primary caretakers, is contrary to Montana law;

(2) whether the findings of fact and conclusions of law are supported by substantial credible evidence.

This Court has long held that awarding custody is a matter for the District Court's discretion. Bailey v. Bailey (1979), 184 Mont. 418, 603 P.2d 259. The award of custody

must be based on the best interest of the child to determine custody rights between natural parents. Henderson v. Henderson (1977), 174 Mont. 1, 9, 568 P.2d 177, 181-182. The court must take into consideration the criteria set forth in § 40-4-212, MCA.

The mother argues this standared is not appropriate in this case citing In the Matter of Guardianship of Aschenbrenner (1979), 182 Mont. 540, 597 P.2d 1156. She contends custody is in fact being awarded to N.T.E.'s grandparents. If, indeed, custody had been awarded to the grandparents, the best interest of the child standard would not be appropriate. The father, however, was awarded custody, and not the grandparents.

It is true N.T.E.'s grandmother cares for him during the five-day period when the father is at work. Her lengthy testimony included the fact she has raised four children of her own, that even though she serves as N.T.E.'s primary babysitter, his father is the primary caretaker when he is at home, and that he shoulders all of the responsibilities for the child's care. When possible, he bathes the child, feeds him, gives him his medicine, checks his temperature, and generally cares for N.T.E.

The court specifically concluded "that awarding custody to [the father] does not, in effect, award custody to the paternal grandparents." In fact if the father has not incorporated N.T.E. into his own household a majority of the time within one year, the mother may schedule a show cause hearing to determine if the father is still the primary custodian. Furthermore, the mother was granted reasonable visitation privileges, including having N.T.E. in her household every other weekend. The court reserved the right to increase the mother's visitation privileges after N.T.E.

4

reaches age four, if a show cause hearing at that time determines it is in his best interest to do so.

The mother contends that because the District Court did not consider N.T.E.'s Native American heritage when awarding custody, his best interest was not adequately addressed. The mother did not, however, present any evidence to the District Court regarding N.T.E.'s Native American heritage. She asserts that she believes it is clear the father holds some very prejudicial opinions of Native Americans. There is no evidence in the record to support her charges. Her claim that the District Court "failed to protect the child's fundamental civil rights" by some undefined failure regarding N.T.E.'s heritage as a Native American is not supported by the evidence. The father indicated at trial he would help N.T.E. identify with his Native American heritage as best he could. We find the best interest of the child standard was applied even though the court did not consider N.T.E.'s Native American heritage before awarding custody to the father.

We find here that the District Court carefully weighed all factors and set forth those factors clearly in its order as required by Montana law. See Marriage of Barron (1978), 177 Mont. 161, 580 P.2d 936.

The second issue is whether the findings of fact, conclusions of law and order are supported by substantial credible evidence.

There is considerable evidence that N.T.E.'s health and emotional well-being suffered during the custody proceedings. Dr. Steven R. Smith, N.T.E's treating physician, noted that the child had upper respiratory infections, ear infections, asthmatic-like symptoms and eczema which very likely were related to the stress of being shuffled back and forth between his parents. Dr. Smith's letter to Judge Green of

5

Missoula, hereinafter quoted, is a thoughtful plea to the District Court to resolve the custody dispute as quickly as possible. Dr. Smith found that the constant transportation of N.T.E. from one home to another was extremely detrimental to the child.

Quoting Dr. Smith's letter to Judge Green:

> I am writing regarding the case of [N.T.E.] an 11½ month old Caucasian male infant over whom a custody suit is currently being conducted by his parents.
>
> At the current time this child's custody is being changed every few days of the week between the mother, father, and grandparents involved.
>
> I am writing to tell you that this form of custody needs to end. I have seen this child only on a few occasions but am now becoming his primary physician in the Superior area as Dr. Vern Gottleaber has left this area.
>
> In reviewing [N.T.E.'s] records I find that this child has been evaluated so many times it is unbelievable, by doctors both here and elsewhere including evaluations for failure to thrive. Additionally the child has been afflicted with a number of infections including upper respiratory infections, ear infections, asthmatic like symptoms, allergies and eczema.
>
> Enough is enough. I suggest to you that the allergy this baby has is an allergy to being treated like a human basketball. [N.T.E.] is being thrown on a weekly basis from one home situation to another having very little time to establish any kind of bonding situation with either family. He is involved in some kind of a damn circus over which he has absolutely no control. He is just simply an object for possession. It is my firm and professional opinion that the child is

not going to thrive in a situation where he has no constant stable home life. He may survive and then again he may not, but he is not going to thrive. In addition to that, if you are going to evaluate a child for thriving in any given situation, one week is not a long enough period of time to do that. It needs to be done over a period of probably several months.

Please, I implore you for the ache that comes inside of me every time I see this child, to please make a decision for custody that will allow this child a home. It doesn't really matter which home he goes to live at, as either has to be better than what he is going through right now.

We have a lengthy record covering the testimony of many witnesses and the trial court set forth detailed and well supported findings of fact. We find that those findings of fact were made in consideration of the factors set forth by § 40-4-212, MCA, and by our holding in Cameron v. Cameron (1982), 197 Mont. 226, 641 P.2d 1057. We have previously held that the District Court need not make specific findings regarding every element set forth in § 40-4-212, MCA, but only findings necessary to support the conclusions arrived at by the court. See Burleigh v. Burleigh (1982), 200 Mont. 1, 6, 650 P.2d 753, 756.

This Court has held that the district court's decision in such matters will not be disturbed "absent a clear preponderance of the evidence against the court's decision." Gilmore v. Boehm (Gilmore) (1978), 166 Mont. 47, 50, 530 P.2d 480, 482; Rule 52(a), M.R.Civ.P. Here, the District Court was provided with sufficient evidence of the mother's troubled past and present life, and has made a decision that

the child's best interest would be served by making the father N.T.E.'s primary custodian.

The decision of the District Court is affirmed.

_____John Conway Harrison_____
Justice

We concur:

_____J. A. Turnage_____
Chief Justice

_____John C. Sheehy_____

_____[signature]_____

_____L. C. Gulbrandson_____
Justices

8