No. 96-637

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE MARRIAGE OF

JEANNI TRYAN,

Petitioner and Appellant,

and

WADE TRYAN,

Respondent and Respondent.

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Daniels,
The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Katherine M. Irigoin; Neff, Cresap, Rathert, Eiken & Irigoin;
Sidney, Montana

Thomas W. Trigg; Attorney at Law; Missoula, Montana

For Respondent:

Loren J. O'Toole II; O'Toole & O'Toole;
Plentywood, Montana

FILED

APR 15 1997

Ed Smith

Filed: CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: March 20, 1997

Decided: April 15, 1997

Clerk

Justice Jim Regnier delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Jeanni Tryan appeals from the Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage, entered by the Fifteenth Judicial District Court, Daniels County, on September 12, 1996. Jeanni specifically appeals the conclusion of the District Court that it is in the best interest of the parties' minor child, Kyle Tryan, to be placed primarily in the residential custody of his father, Wade Tryan. We affirm.

The issues on appeal are:

1.     Did the District Court abuse its discretion in its application of the standard for determining the best interest of a child under § 40-4-212, MCA, by naming Wade Tryan as the primary residential custodian of the parties' minor child?

2.     Did the District Court err in failing to award attorney fees to Jeanni Tryan?

### FACTUAL BACKGROUND

Jeanni and Wade Tryan were married on March 2, 1995. Jeanni is employed as a billing clerk and Wade is a farmer. The parties have one child, Kyle Tryan, born on March 25, 1995. Jeanni has five other children by a previous marriage. Jeanni and Wade separated on October 16, 1995, approximately seven months after their marriage.

2

The dissolution was tried before the Fifteenth Judicial District Court on August 20, 1996. At trial, both parties indicated their desire to have permanent custody of their seventeen-month-old child. The testimony given at trial demonstrated that during the months of March, April, and May 1995, and during the school term of 1995-96 the paternal grandparents provided daily care for Kyle while Jeanni was at work. Wade testified that he also provided substantial care for Kyle during the winter months, as his occupation allowed a more flexible schedule than Jeanni's schedule. Jeanni testified, and Wade agreed, that when she was not working her regular hours, or overtime, she was generally with the children.

Jeanni testified extensively about Wade's drinking habits. She explained that Wade spent a substantial amount of time at the Flaxville bar. She testified as to particular instances when Wade consumed an excessive amount of alcohol and had to receive rides home because he believed he was too intoxicated to drive. Jeanni stated that Wade had a drinking problem and had difficulty controlling his temper, especially after consuming alcohol. Jeanni testified as to certain times when Wade lost his temper and, for example, punched a hole in the wall.

Wade testified that he did go to the Flaxville bar quite often and had called someone to pick him up and drive him home when he felt he was too intoxicated to drive. He also stated that he probably stopped in the bar every day in order to visit friends. Wade testified, however, that he did not abuse chemicals. There was additional testimony by Randy

3

Wangerin, a long-time friend of Wade's, and by Wade's sister-in-law, that neither of them believed Wade was an alcoholic or had a drinking problem.

After hearing the testimony, the District Court issued its findings of fact and conclusions of law. In its findings, the court stated that the parties demonstrated that neither parent abused nor neglected the child, that Kyle had a good relationship with both parents, and that joint custody was appropriate. The court specifically noted in its findings Jeanni's testimony regarding Wade's drinking habits and stated that it was aware that small town bars can "also double as coffee shops, restaurants, community centers and as the common place where people meet to discuss business." The court found that Wade Tryan and Kyle's paternal grandparents had provided the substantial care of Kyle during the marriage. The District Court therefore concluded that it was in the child's best interest to award joint custody with Wade being the primary residential custodian of Kyle during the school months. Jeanni appeals this determination.

## ISSUE 1

Did the District Court abuse its discretion in its application of the standard for determining the best interest of a child under § 40-4-212, MCA, by naming Wade Tryan as the primary residential custodian of the parties' minor child?

The standard of review for a district court's award of child custody is whether the district court's findings are clearly erroneous. *In re Marriage of Dreesbach* (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021. The findings of fact must be based on substantial,

4

credible evidence, and the court's decision will be upheld unless the court clearly abuses its discretion. *Marriage of Dreesbach*, 875 P.2d at 1021; *In re Marriage of Njos* (1995), 270 Mont. 54, 60, 889 P.2d 1192, 1195; *In re Marriage of Hunt* (1994), 264 Mont. 159, 164, 870 P.2d 720, 723. Furthermore, it is not the function of this Court to reweigh the evidence, substitute our evaluation of the evidence, or pass on the credibility of the witnesses. *In re Matter of J.L.* (1996), 277 Mont. 284, 922 P.2d 459; *Wunderlich v. Lumbermens Mut. Cas. Co.* (1995), 270 Mont. 404, 407, 892 P.2d 563, 566.

Jeanni asserts that the District Court's findings are clearly erroneous and that it abused its discretion because it ignored Wade's allegedly serious drinking problem, overlooked Jeanni's role as Kyle's alleged primary care giver, and wrongfully favored Wade's parents as babysitters, rather than the professional child care service preferred by Jeanni.

Wade argues that the District Court did consider the evidence and testimony presented regarding his drinking habits, which parent served as the primary care giver, and Kyle's relationship with his paternal grandparents. He asserts that the District Court was presented with contradictory evidence and testimony, was in the best position to resolve these conflicts, its findings were not clearly erroneous, and thus, the District Court did not abuse its discretion in its determination that Wade should be the primary residential custodian of Kyle.

In a determination of an award of child custody, the district court must consider the best interest of the child. Section 40-4-212, MCA. The court must consider all relevant factors, including whether a parent has a chemical dependency or chemical abuse problem.

5

Section 40-4-212(1)(g), MCA. Chemical dependency is defined in § 54-24-103(4), MCA, as

> the use of any chemical substance, legal or illegal, that creates behavioral or health problems, or both, resulting in operational impairment. This term includes alcoholism, drug dependency, or both, that endanger the health, interpersonal relationships, or economic functions of an individual or the public health, welfare, or safety.

An alcoholic is defined by § 53-24-103(1), MCA, as

> a person who has a chronic illness or disorder of behavior characterized by repeated drinking of alcoholic beverages to the extent that it endangers the health, interpersonal relationships, or economic function of the individual or public health, welfare, or safety.

Jeanni asserts that the District Court not only ignored her testimony, but also Wade's own testimony regarding his drinking habits. Wade testified that he drank around friends. He testified that there were times when he was intoxicated and could not drive his vehicle home. Jeanni also testified to these events and to her belief that Wade had a drinking problem. Jeanni's mother testified that Jeanni was "the sober parent without a doubt." There was also substantial testimony by Randy Wangerin, who had known Wade for eighteen years, that Wade was not an alcoholic. Lisa Tryan, Wade's sister-in-law, testified that she did not think that Wade had a drinking problem and that he has never exhibited any unusual behavior regarding alcohol consumption. Wade himself testified that he did not abuse chemicals.

6

was the primary care giver. The District Court found that the paternal grandparents cared for Kyle during March, April, and May 1995, and during the school term of 1995-96, and that Wade provided substantial care of Kyle during the winter months and spent all the time Jeanni allowed him with Kyle. Although the District Court did not specifically state which parent was the primary care giver, it is clear to this Court that this factor was taken into consideration when it determined that primary residential custody should be awarded to Wade. The district court is not required to make specific findings on each individual factor of § 40-4-212, MCA. *Dreesbach*, 875 P.2d at 1020. As we have previously stated, we will not substitute our judgement for that of the trial court and reweigh the evidence. The findings of the District Court regarding the primary care of Kyle are supported by substantial evidence in the record and are not clearly erroneous.

Jeanni raises a third and final challenge to the District Court's application of the best interest of the child standard. She asserts that the District Court abused its discretion when it named Wade as the primary residential custodian because it allegedly favored Wade's choice of grandparents as day care providers over her preference of a professional day care service.

The District Court concluded that it was in Kyle's best interest to be in the care of his father. It then stated that it was also in Kyle's best interest to be also in the care of his grandparents, rather than to be placed in a day care for the school term. This conclusion is not an abuse of the court's discretion. Section 40-4-212(1)(c), MCA, states that a relevant

8

factor in determining custody is the interaction and interrelationship of the child with the child's parent, or parents and siblings, and with any other person who may significantly affect the child's best interest. The record clearly provides that the grandparents and Kyle have a close, loving relationship and that Kyle spends a considerable amount of time with his paternal grandparents. The District Court decision did not award custody to Kyle's paternal grandparents. *See In re Custody of N.T.E.* (1987), 227 Mont. 396, 739 P.2d 485. Nor is there any evidence that the court actually weighed the fact that Jeanni chose to use professional day care against her. Furthermore, there is nothing in the decree or in the record that suggests the District Court may have based its decision in this case on the parents' relative financial abilities, relating in particular to child care, as Jeanni implies. The District Court merely considered the interrelationship of Kyle with his grandparents as it would be affected in an award of custody pursuant to the mandates of § 40-4-212(1)(c), MCA.

In sum, the District Court considered the relevant factors in determining which parent acting as primary residential custodian was in the best interest of Kyle, including but not limited to; the wishes of the parents, the interaction and interrelationship of Kyle with his grandparents who significantly affect his best interest, Kyle's adjustment to his home, and any possible chemical dependency or chemical abuse problem of either parent. We hold that the District Court's finding that it was in the best interest of the parties' minor child to be placed in the primary residential custody of Wade, was based on substantial evidence in the

9

record and was not clearly erroneous. The District Court did not clearly abuse its discretion in making this determination.

## ISSUE 2

Did the District Court err in failing to award attorney fees to Jeanni Tryan?

The district court has discretion to grant attorney fees after considering the financial resources of both parties. Section 40-4-110, MCA. We will not overturn a district court's decision regarding an award of attorney fees absent an abuse of discretion. *In re Marriage of Wackler* (1993), 258 Mont. 12, 850 P.2d 963; *In re Marriage of Manus* (1987), 225 Mont. 457, 733 P.2d 1275.

After considering the financial resources of both parties, the District Court found that neither should receive attorney fees and costs from the other. Included in the District Court's decree were numerous findings regarding income and assets of the parties' earnings and holdings. The court's findings were supported by substantial evidence in the record and the District Court did not abuse its discretion in concluding that neither party should receive attorney fees.

We affirm.

_____
Justice

10

We Concur:

_William E Hunt Sr_

_Terry Trieweiler_

_Karla M. Gray_

_W. William Leaphart_
Justices