No. 99-293

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 254

IN RE THE MARRIAGE OF

JEANETTE M. KOTECKI,

Petitioner and Respondent,

and

RICHARD B. KOTECKI,

Respondent and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Craig R. Buehler, Lewistown, Montana

For Respondent:

E. Wayne Phillips, Hubble, Ridgeway & Phillips, Stanford, Montana

Submitted on Briefs: January 13, 2000
Decided: September 26, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Montana's Tenth Judicial District Court, Fergus County, awarded Jeanette Kotecki (Jeanette) a portion of Richard Kotecki's (Richard) retirement funds, along with $900 per month in child support and $300 per month conditional maintenance for 60 months pursuant to their marriage dissolution action. Richard appeals. We affirm the District Court's ruling.

¶2 Richard raises the following issues on appeal:

> 1. Whether the District Court erred when it awarded Jeanette a portion of Richard's retirement funds.

> 2. Whether the District Court erred when it awarded child support of $900 per month payable to Jeanette.

¶3 Jeanette Frounfelter and Richard Kotecki were married in December of 1987. Jeanette had acquired a home in May of 1987 in her name that both parties worked to improve in a number of ways, substantially raising its value concurrent with a general inflationary trend in property values in the Missoula, Montana, area.

¶4 Two sons were born to Jeanette and Richard during the course of their marriage, one of whom has had more than the normal health problems attendant to childhood. The children were born in 1992 and 1993. Jeanette is the residential custodian of the children under the decree of dissolution.

¶5 Richard and Jeanette were both employed during all phases of their relationship. Richard was a sheet metal worker, ultimately gaining his union card in 1989, and Jeanette worked for the U.S. Forest Service. Jeanette was convicted of embezzling nearly $25,000 from the Forest Service in 1995 and consequently lost her job. She made restitution from her government retirement account. By her own admission Jeannette has considerable difficulty managing money and her spending habits and has accumulated sizeable credit

card obligations over the years.

¶6 Following Jeanette's job loss and criminal prosecution, the Lolo house was sold, most debts were paid, and the family moved to Lewistown to be closer to Jeanette's family. Jeanette has worked at a nursing home part-time, among other less gainful ventures. Richard continued work in his field but found it necessary to commute and be absent from home for periods of time.

¶7 Jeanette and Richard separated in 1997 and sought a divorce, which was finalized in March of 1999. The proceedings were contentious, centering principally around the distribution of marital assets. The District Court conducted extensive hearings and entered its Findings of Fact, Conclusions of Law and Decree of Dissolution on March 8, 1999. Under the decree Richard was required to relinquish one-fourth of his retirement fund to Jeanette, and pay $900 per month in child support for the two children and $300 per month in maintenance to Jeanette conditioned upon her managing her personal finances according to the court's requirements in the decree. Richard appeals the pension distribution and the monthly child support award.

¶8 The standard for reviewing the actions of district courts is well settled, and applies to both issues in this case. Findings of fact shall not be set aside unless clearly erroneous. Rule 52 (a), M.R.Civ.P.; *In re the Marriage of Eklund* (1989), 236 Mont. 77, 80, 768 P.2d 340, 343. We employ a three-part test when determining whether a district court's findings are clearly erroneous. These elements are: 1) Whether the findings are supported by substantial evidence in the record; 2) whether the trial court has misapprehended the effect of the evidence; and 3) if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that the trial court's findings are clearly erroneous when, although there is evidence to support it, a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. *In re the Marriage of Schmitz* (1992), 255 Mont. 159, 165, 841 P.2d 496, 500 (citing *Interstate Production Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

¶9 After reviewing the record this Court is left with the definite and firm conviction that the District Court's findings are supported by substantial evidence ("[E]vidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Barrett v. Asarco, Inc.* (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080); the District Court has not misapprehended the effect of the evidence; and that no mistake has been committed.

Therefore the District Court's findings are not clearly erroneous. If we conclude the court's findings are not clearly erroneous, we review the distribution to determine if the court abused its discretion. To determine abuse of discretion we look to whether "the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re the Marriage of Wessel* (1986), 220 Mont. 326, 333, 715 P.2d 45, 50. Here, the District Court's findings are not clearly erroneous. Because the court did not act arbitrarily without employment of conscientious judgment or exceed the bounds of reason, resulting in substantial injustice, given the appropriate and thorough analysis of requisite factors, the court did not abuse its discretion. We affirm the District Court's rulings as to both issues 1 and 2.

## Issue 1

¶10 Whether the District Court erred when it awarded Jeanette one-fourth of Richard's retirement funds.

¶11 We have previously established that retirement funds are a part of the marital estate. *In re the Marriage of Rolfe* (1985), 216 Mont. 39, 46, 699 P.2d 79, 83. Therefore Richard's retirement funds were properly considered by the District Court in dividing the marital estate. Richard contends, however, that Jeanette's conviction for embezzlement and resultant need to exhaust her own retirement to pay restitution constituted marital misconduct, and she should therefore not be entitled to any portion of his retirement fund.

¶12 Marital misconduct is not a factor in a court's equitable division of marital property. Section 40-4-202, MCA; *In re the Marriage of Griffin* (1993), 260 Mont. 124, 141, 860 P.2d 78, 89; *In re the Marriage of Collett* (1981), 190 Mont. 500, 504, 621 P.2d 1093, 1095 (husband had exercised dominion over $26,000 realized from sale of marital assets; trial court imposed payment obligation on husband as "partial recompense" for prior acts. We stated unequivocally that marital misconduct is not to be considered in dividing the marital estate and vacated judgment for this and other reasons). Similarly, we conclude that Jeanette's actions here do not warrant an exception to the unequivocal statutory language.[1]

¶13 Section 40-4-202, MCA, lists factors the court must consider when dividing marital assets in divorce proceedings. The record shows the District Court addressed these factors at some length. The principal issues raised by Richard were that Jeanette's embezzlement and consequent restitution resulted in dissipation of marital assets, and that under § 1-3-

208, MCA, Jeanette cannot take advantage of her own wrong.

¶14 Title 1, Chapter 1 of the Montana Code Annotated is entitled, "General Provisions," and sets forth maxims of jurisprudence, which are intended not to qualify any of the other provisions of Montana's Code, but simply to aid in their application. Section 1-3-101, MCA. Under generally accepted rules of statutory construction, the specific statute prevails over the general. Section 1-2-102, MCA. The most recognized application of the reasoning presented by Richard is in the discipline of estate law, where someone who would take property under a will murders the other person to hasten the murderer's ownership of the property. The act of murder terminates the beneficiary's rights to the assets regardless of the will's language or intestacy statutes, preventing the murderer from taking advantage of their wrong. *See* § 72-2-813. We will not use this case to expand that doctrine. Because there is indeed a well-developed, precise body of family law and case history to draw upon in determining the disposition of this case, we find no need to rely solely on such general maxims taken from the introductory section of Montana's statutes.

¶15 With regard to the relevant factors in the instant case, including dissipation of assets, the District Court examined the matter closely, appropriately noting the factors set forth in § 40-4-202, MCA. The court found Richard's proposed property division unbalanced and skewed greatly in his favor, in direct contravention of the letter and spirit of the statute. The trial court concluded:

> All of this in spite of the fact Richard essentially brought nothing into the marriage, would leave much better off, while Jeanette, who came into the marriage with substantial property, would leave the marriage penniless.

¶16 The record is replete with examples of Richard's role in dissipating the marital estate, including a boat, vehicles and a travel trailer purchased and then sold or traded a short time later for thousands of dollars less than would be reflective of normal depreciation in those short time spans. The court found these transactions were orchestrated solely by Richard, and resulted in significant losses in net assets to the marital estate, even after factoring in assets added to the transactions by Richard's friends and his mother.

¶17 The court properly balanced its review of dissipation of marital assets by noting Jeanette's credit card debts and general spending habits, and the role these debts played in depleting the equity realized from the sale of the Lolo house and later a home in Lewistown. The record shows the court also noted that neither Richard or Jeanette were

afflicted with vices such as excessive gambling or drinking. The court concluded that the beneficiaries of Jeanette's spending excesses could only be members of the family unit, including Richard.

¶18 Furthermore, the record indicates the District Court made every reasonable effort to ascertain the intrinsic value of personal property toward the court's goal of equitably dividing the marital estate as required under Montana's statutes. The value of a refurbished older pickup, or the resale market for timeshare condominium units, or household goods are all especially volatile, dependent not on their appeal to a broad section of the market, but on the personal predilections of unique and often rare buyers. The record shows the District Court conducted a thorough analysis in equity of the required factors in determining how to allocate the marital estate in toto, and its findings here are not clearly erroneous. We affirm the District Court's ruling that one-fourth of Richard's retirement funds should be transferred to Jeanette.

Issue 2

¶19 Whether the District Court erred when it awarded $900 per month in child support payable to Jeanette.

¶20 The amount of support determined under Montana's child support guidelines, codified at § 40-4-204, is presumed to be an adequate and reasonable support award, unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to any of the parties or is inappropriate in the case at bar. Section 40-4-204, MCA. Here, the amounts of child support calculated by both parties under the guidelines differed by several hundred dollars. Based on evidence presented at trial, the District Court found that the daycare costs estimated by the parties were not reflective of either actual or realistic anticipated costs and made an appropriate adjustment within the guidelines. Jeanette has now supported the court's finding on this matter in her response brief, though her initial calculations presented to the District Court indicated a higher amount. The court did not abuse its discretion in doing so and substantially followed the guidelines. We affirm on that basis.¶21 Finally, Jeanette argues that Richard's appeal is trifling and without substantial basis and thus subject to an award of damages under Rule 32, M.R.App.P. This Court has previously awarded damages where an appeal was trifling, without substantial basis, and mean-spirited. We are not satisfied from the record, as we must be under the rule, that this aggregation of circumstances is present here and decline to award damages.

¶22 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

1. This case does not involve a situation in which the criminal conduct, in and of itself, caused the dissipation of marital assets at which the unlawful conduct was directed. Whether marital misconduct may be considered in the distribution of the marital estate under those facts is left for decision in a future case.