No. 02-659

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 248N

IN RE THE MARRIAGE OF

BRIAN J. DOAK,

       Petitioner and Appellant,

   and

KATHLEEN M. DOAK,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Sixth Judicial District,
                   In and For the County of Park, Cause No. DR 2000-82,
                   Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Karl Knuchel, Attorney at Law, Livingston, Montana

       For Respondent:

              J. Robert Planalp, Attorney at Law, Bozeman, Montana

Submitted on Briefs:  June 12, 2003

Decided:  September 18, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1   Pursuant to Section I, Paragraph 3(d)(i), Montana Supreme Court 1996 Internal Operating Rules (Memorandum Opinions), we determine that the legal issues raised in this appeal are clearly controlled by settled Montana law; that the issues are factual and there clearly is sufficient evidence to support the findings of fact below; and that the court's conclusions of law are correct.   Further, pursuant to Section I, Paragraph 3(d)(v), the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2   Brian J. Doak (Brian) appeals from the Sixth Judicial District Court's order dated April 8, 2002, distributing the marital estate.  Kathleen M. Doak (Kathleen) cross-appeals.  We affirm on both the appeal and the cross-appeal.

**BACKGROUND**

¶3   The District Court correctly found the following.  Kathleen is currently a mortgage underwriter, living in New York.  Brian is a retired New York State Trooper who was injured on duty, resulting in numerous back and neck surgeries.  Brian has not worked appreciably since the marriage.  Kathleen and Brian met in the fall of 1982.  They began living together and were romantically involved beginning in 1983.  They moved into a duplex owned by Kathleen's parents.  Brian and Kathleen were married on June 27, 1987, in Schenectady,

New York. Prior to marriage and during cohabitation, the rent paid by Kathleen and Brian to Kathleen's parents was less than monthly rent for comparable apartments or duplexes.

¶4 Beginning in 1988, Brian began receiving monthly insurance and retirement benefits. Brian also received lump sum payments from the State of New York Workers' Compensation Fund and from Social Security. These payments were received near the beginning of the marriage and were commingled with Kathleen's funds and used for family purposes during the marriage.

¶5 In 1988, the couple purchased the duplex they were living in from Kathleen's parents. Brian paid the down-payment. Kathleen's parents financed the balance of the purchase price. Title to the duplex was held in both parties' names. Payment of the mortgage came from Kathleen's income, Brian's insurance and retirement payments, and rental income received by renting the other apartment within the duplex. Kathleen and Brian were jointly able to save funds because they essentially lived rent-free in the duplex as a result of their purchasing the duplex at a reduced price and Kathleen's parents carrying the mortgage. The duplex was sold on February 28, 1994. Because the original purchase price was below the duplex's then-fair market value, the sale resulted in a gain. This gain constituted a gift from Kathleen's parents to the newly married couple in an undetermined amount. This gift from Kathleen's parents off-set the down-payment Brian made.

¶6 The proceeds from the duplex sale were deposited with Kathleen's and Brian's other income in a jointly-owned Realty USA Home Funding Corporation savings account. Because Kathleen worked at Statewide Funding, a sister company to Realty USA Home

3

Funding Corporation, their account was entitled to accrue interest at a rate higher than the prevailing rate for savings accounts.

¶7 In 1993, Kathleen and Brian purchased a track of land south of Livingston, Montana. Both traveled to Montana to interview builders before selecting a builder. The entire cost of building the home came from the joint Realty USA Home Funding Corporation account.

¶8 Kathleen and Brian moved into the Montana home in February of 1995. The couple periodically refinanced the home at interest rates appreciably lower than the then-prevailing market interest rates because Kathleen was employed at Western Home Mortgage Corporation while she lived in Montana. In October of 1995, Brian received a settlement for his involvement in an automobile accident. This money was used to pay down the mortgage on the family home in Montana.

¶9 When the couple refinanced the home in 1998, the proceeds were used to payoff Brian's truck loan, purchase a vehicle for Kathleen, and build a barn. When the parties separated, a balance existed on the house mortgage. Since the separation, Brian has continued to live in the house as his sole residence.

¶10 Throughout the marriage, the parties jointly placed their income into a savings account, transferring funds to a checking account to pay their monthly living expenses. Both parties had IRA retirement accounts created with funds owned by both parties through their employment or retirement. In 1999, Brian used money Kathleen received through gifts and/or inheritance from her parents without Kathleen's permission to buy a tractor.

**DISCUSSION**

¶11    While Kathleen and Brian articulate the issues somewhat differently, the dispositive issues are whether the District Court's findings of fact are supported by substantial evidence, *Holtz v. Deisz*, 2003 MT 132, ¶ 15, 316 Mont. 77, ¶ 15, 68 P.3d 828, ¶ 15 (citing *In re Estate of Charles Kuralt*, 2000 MT 359, ¶ 14, 303 Mont. 335, ¶ 14, 15 P.3d 931, ¶ 14; *Norwood v. Service Distrib., Inc.*, 2000 MT 4, ¶ 21, 297 Mont. 473, ¶ 21, 994 P.2d 25, ¶ 21), whether it abused its discretion, *In re Marriage of Kotecki*, 2000 MT 254, ¶ 9, 301 Mont. 460, ¶ 9, 10 P.3d 828, ¶ 9, and whether its conclusions of law are correct, *Holtz*, ¶ 15 (citing *Kuralt*, ¶ 14; *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

¶12    "The standard of review of a district court's findings of fact is whether they are clearly erroneous." *Holtz*, ¶ 15 (citing *Kuralt*, ¶ 14; *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906). "It is within the province of the trier of fact to weigh conflicting evidence, and a reviewing court will not substitute its own judgment for that of the factfinder on such matters." *Holtz*, ¶ 15 (citing *In re Estate of Brooks* (1996), 279 Mont. 516, 526, 927 P.2d 1024, 1030). Findings of fact are clearly erroneous if "they are not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed." *Holtz*, ¶ 15 (citing *Kuralt*, ¶ 14; *Norwood*, ¶ 21).

¶13    If we conclude the findings are not clearly erroneous, we then review the marital estate distribution to determine if the court abused its discretion. *Kotecki*, ¶ 9. To determine abuse of discretion, we consider whether "the trial court acted arbitrarily without

5

employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Kotecki*, ¶ 9 (citing *In re the Marriage of Wessel* (1986), 220 Mont. 326, 333, 715 P.2d 45, 50).

¶14 "We review a district court's conclusions of law *de novo*, to determine whether the court's interpretation of law is correct." *Holtz*, ¶ 15 (citing *Kuralt*, ¶ 14; *Carbon County*, 271 Mont. at 469, 898 P.2d at 686).

¶15 From the record on appeal before us it is readily apparent that both the appeal and the cross-appeal are without merit because the issues are clearly controlled by settled Montana law; because the issue is factual and there is clearly sufficient evidence to support the trial court's findings of fact; and because the District Court's conclusions of law are correct. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JIM RICE