05-664

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 178

IN RE THE MARRIAGE OF

LOU RUDOLF,

       Petitioner and Appellant,

  and

JERI NAGEL RUDOLF,

       Respondent and Respondent.


APPEAL FROM:    District Court of the Fifth Judicial District,
                    In and For the County of Beaverhead, Cause No. DR 03-12600
                    Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           John S. Warren, Davis, Warren & Hritsco, Dillon, Montana

       For Respondent:

           Rienne H. McElyea, Berg, Lilly & Tollefsen, Bozeman, Montana


                              Submitted on Briefs:  December 6, 2006

                                       Decided:  July 25, 2007

Filed:

               _____
                              Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Lou Rudolph (Lou) appeals from an order of the Fifth Judicial District Court, Beaverhead County, dissolving his marriage with Jeri Rudolph (Jeri) and awarding Jeri maintenance. We reverse and remand for further proceedings consistent with this opinion.

¶2    Lou raises the following issues on appeal:

¶3    1.    Did the District Court err in the distribution of the marital estate because it did not consider $255,000 in assets and $30,000 of debt?

¶4    2.    Did the District Court err in awarding maintenance to Jeri without considering the factors of § 40-4-203(2), MCA?

¶5    3.    Did the District Court err by awarding Jeri maintenance for a term equal to the length of the marriage?

¶6    4.    Did the District Court err by awarding Jeri retroactive maintenance?

BACKGROUND

¶7    Lou and Jeri were married in 1980. Lou was employed as a diagnostic radiologist and Jeri worked as a registered nurse until 1985, when the couple's first child was born. They eventually had three children, one of whom was still a minor when this proceeding was commenced.

¶8    Because of the decision to cease working outside the home in order to care for their children, Jeri allowed her nursing license to lapse. In 1994 the family moved to Dillon, Montana, where Lou opened a radiology clinic.

¶9    The parties separated in January, 2000. Jeri and the children moved to Bozeman, while Lou stayed in Dillon. Jeri testified that Lou encouraged her not to seek employment

2

while they were separated. At the beginning of their separation, the couple paid for the household expenses out of their joint checking account. Lou also continued to pay for Jeri and the children's car insurance and some medical and school-related expenses.

¶10 In March, 2003, Lou filed this action. Three months later Jeri moved for temporary child support and maintenance. In an interim order issued in February, 2004, the District Court ordered Lou to pay Jeri a total of $4,200 per month – $3,200 as child support and $1,000 as maintenance. The court ordered these amounts be paid retroactively to July, 2003. Lou was also required to continue paying the children's school tuition, health insurance, uninsured medical expenses, and Jeri's car insurance. Later Lou opted to postpone the date set for trial, resulting in an increase in interim maintenance of $500 per month.

¶11 A few months prior to commencement of this action, while the parties were separated, Jeri secured a part-time retail job at a Bozeman bookstore. A year later, in September, 2003, Jeri found a part-time nursing position with Montana State University, but she was laid off in May, 2004, when the position was eliminated. A few months later Jeri secured another part-time nursing position.

¶12 Trial was held March 22, 2005. On cross-examination, when questioned about his income, Lou agreed that his taxable income for the previous four years "may" have averaged $260,000. Lou's accountant, however, testified that while his income for 2004 was $245,384, after paying his various obligations, Lou had only $7,455 for his own living expenses. The accountant further testified that in 2004, by relying on inheritance, loan proceeds and other sources, Lou had actually spent $22,553 more than he made.

¶13 The District Court issued its decree dissolving the marriage, distributing the marital estate and awarding Jeri maintenance in September, 2005. The court found there were significant differences in earning potential between Lou and Jeri, that Jeri lacked sufficient property to provide for her reasonable needs, and that she was unable to support herself through appropriate employment due to her limited experience and dated skills. The court determined that $3,450 per month was a reasonable amount of maintenance for Lou to pay for ten years, retroactively commencing on the date the parties separated, January 28, 2000, and including arrearages in the amount of $500. Then, beginning on January 28, 2010, Lou's maintenance payments to Jeri would decrease to $2,500 per month for an additional seven years. Finally, on January 28, 2017, maintenance would further decrease to $1,500 per month for an additional two years before ending entirely on January 28, 2019.

¶14 From this order, Lou appeals.

## STANDARD OF REVIEW

¶15 Our standard of review for marriage dissolution cases is set forth in *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, ¶ 10, 124 P.3d 1151, ¶ 10:

> We review the district court's findings of fact in a dissolution proceeding to determine whether they are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence or our review of the record convinces us that the district court made a mistake. *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, ¶ 14, 107 P.3d 488, ¶ 14 (citations omitted). Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *In re Marriage of Payer*, 2005 MT 89, ¶ 9, 326 Mont. 459, ¶ 9, 110 P.3d 460, ¶ 9 (citation omitted). A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *In re Marriage of Kotecki*, 2000 MT 254, ¶ 9, 301 Mont. 460, ¶ 9, 10 P.3d 828, ¶ 9.

4

¶16 Our standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Seubert v. Seubert*, 2000 MT 241, ¶ 12, 301 Mont. 382, ¶ 12, 13 P.3d 365, ¶ 12 (citation omitted). As a general rule, pursuant to § 40-4-202, MCA, a district court has broad discretion to distribute the marital estate equitably. *In re Marriage of Killpack*, 2004 MT 55, ¶ 8, 320 Mont. 186, ¶ 8, 87 P.3d 393, ¶ 8.

ISSUE ONE

¶17 Did the District Court err in the distribution of the marital estate because it did not consider $255,000 in assets and $30,000 of debt?

¶18 Lou argues that the District Court erred because the distribution of the marital estate neither valued nor distributed $240,402 of life insurance Lou had paid for as part of his defined benefit retirement plan, a $15,000 IRA, and more than $30,000 of debt.

¶19 Jeri responds that the District Court's failure to separately list Lou's insurance as an asset is harmless error, because the court distributed to her a percentage of the overall value of the defined benefit plan. Thus, according to Jeri, because it is part of the defined benefit plan, she should be distributed the same percentage of the insurance as she received in the rest of the plan. Jeri also claims the failure to consider the $15,000 IRA is harmless error in light of the overall value of the parties' assets. Finally, Jeri argues the $30,000 in debt should be attributed to Lou because a significant portion of it was incurred by him in paying Jeri pursuant to the District Court's interim order for maintenance.

¶20 We have previously held that the true net worth of the marital estate must be accurately determined before the issues of equitable apportionment and maintenance can be

5

resolved. *In re Hanni*, 2000 MT 59, ¶ 37, 299 Mont. 20, ¶ 37, 997 P.2d 760, ¶ 37 (citing *In re Marriage of Lundvall*, 241 Mont. 172, 175, 786 P.2d 10, 12 (1990)).

¶21    Our review of the record supports Lou's claim that three insurance policies with a value of $240,402 were not considered by the District Court when it valued and divided the marital estate. The court's distribution of the defined benefit plan – of which the insurance was a part – nowhere includes the cash value of these insurance policies. Because these significant assets were not mentioned by the District Court in its decree, both the parties and this Court are forced to guess whether the District Court considered them in distributing the marital estate, and if they were considered in the maintenance award. Nor will we simply assume, as Jeri urges, that the value of the insurance should be distributed in the same percentages that the District Court allocated the other portions of the defined benefit plan.

¶22    Also, both parties make reference to a $15,000 IRA belonging to Jeri as well as $30,000 of debt owed by Lou. Although Jeri and Lou disagree how this asset and this debt should be distributed, they agree that the $15,000 IRA in Jeri's name and the $30,000 debt both, in fact, exist. It is undisputed that neither of these items was distributed by the District Court. Once again, we are left to guess at how these amounts were accounted for – if they were accounted for at all – and how they may have affected the equitable distribution of the marital estate and maintenance.

¶23    The District Court's findings of fact and conclusions of law do not conform to the evidence because $255,000 in assets and $30,000 in debt are omitted. Thus, the true net worth of the marital estate was not accurately determined. Before issues of equitable apportionment and maintenance can be resolved, the District Court must consider the entire

6

marital estate. *See Hanni*, ¶ 37. Therefore, we must remand this case to the District Court for additional consideration of the equitable distribution of the marital estate and, after such distribution, how any award of maintenance is affected.

## ISSUE TWO

¶24 Did the District Court err by awarding Jeri maintenance without considering the factors found in § 40-4-203(2), MCA?

¶25 Lou claims the District Court erred in awarding Jeri maintenance without considering the factors in § 40-4-203(2), MCA. Specifically, Lou claims the District Court: (1) failed to address Jeri's ability to meet her needs independently; (2) made no finding of how much time was necessary for Jeri to acquire additional training to find employment as a registered nurse; (3) made no finding as to just what the parties' standard of living was; (4) determined maintenance as if the parties had been married 19 years when, in fact, the marriage had lasted more than 24 years; (5) gave no indication as to whether Jeri's physical and emotional condition played a part in its maintenance award; and (6) evaluated Lou's ability to pay maintenance with only a conclusory statement that he could "afford to pay $3,450 for maintenance," without a specific explanation as to how this fact was determined.

¶26 Section 40-4-203(2) provides:

> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

7

(c) the standard of living established during the marriage;
(d) the duration of the marriage;
(e) the age and the physical and emotional condition of the spouse seeking maintenance; and
(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

¶27 Although a district court must consider each factor in § 40-4-203, MCA, it need not make a specific finding relating to each, provided that this Court can determine the trial judge actually considered each factor. *In re Marriage of Payer*, 2005 MT 89, ¶ 12, 326 Mont. 459, ¶ 12, 110 P.3d 460, ¶ 12 (citing *In re Marriage of Grende*, 2004 MT 36, ¶ 38, 320 Mont. 38, ¶ 38, 85 P.3d 788, ¶ 38). These factors must be considered by the district court as a whole in the determination of a final maintenance award. *In re Marriage of Ernst*, 243 Mont. 114, 118, 793 P.2d 777, 780 (1990). Because district courts face a difficult task in awarding maintenance, our final analysis is not whether we would reach a different conclusion after considering the same evidence, but rather whether there is sufficient evidence to support its conclusion. *Payer*, ¶ 15 (in part quoting *In re Marriage of Haines*, 2002 MT 182, ¶ 23, 311 Mont. 70, ¶ 23, 53 P.3d 378, ¶ 23).

¶28 As we noted in Issue One, a final award of maintenance, if any, and the amount and duration of such an award, must ultimately await a correct computation of the net value and an equitable distribution of the marital estate. Upon remand, the District Court shall reconsider both the distribution of the marital estate and the need for maintenance and enter further findings of fact and conclusions of law. Thus, we need not further address this issue.

ISSUE THREE

8

¶29  Did the District Court err by awarding Jeri maintenance for a term equal to the length of the marriage?

¶30  The court found that, "A reasonable period of time for Husband to pay maintenance is a term equal to the length of the marriage…." According to Lou, the District Court erred in determining maintenance because it essentially looked to the duration of the marriage as the overriding factor in setting the amount of maintenance and the time during which it must be paid. Lou also notes that the parties were married for more than 24 years, not the 19 years the District Court relied upon in fixing maintenance.

¶31  Jeri argues that the District Court has broad discretion in awarding maintenance and that this award was well within that discretion.

¶32  Section 40-4-203(2)(d), MCA, as noted above, requires a district court to consider the "duration of the marriage" in a maintenance order. Maintenance is interrelated with and supplements a property division. If, after an equitable division of the marital assets, one party lacks sufficient property to fulfill his or her reasonable financial needs, maintenance may be appropriate. *In re Marriage of Cole*, 234 Mont. 352, 356, 763 P.2d 39, 42 (1988). The duration of the marriage is one of the factors to be considered in fixing the duration of maintenance. During the course of a marriage, a spouse, by contributing to the marriage over time, may have lost the ability to support himself or herself independently. If the marriage ends, maintenance may be necessary to allow that spouse to acquire and develop skills to support himself or herself in the accustomed manner and, perhaps, even to acquire an estate.

¶33  Consideration of the length of marriage in fixing maintenance, however, is not payback for time spent in a bad marriage. The purpose of considering the length of a

9

marriage is to equitably fix an amount of time necessary for a spouse to get into a position where he or she should reasonably be able to support himself or herself. Yet, at the same time, the length of the marriage is not the overriding factor precluding consideration of the other factors in § 40-4-203(2), MCA. *See Lundvall*, 241 Mont. at 175-76, 786 P.2d at 12-13.

¶34 The District Court awarded Jeri maintenance to be paid in decreasing amounts over 19 years. For the first 10 years, Lou is to pay Jeri $3,450 per month. This amount then decreases to $2,500 per month over the next seven years, then to $1,500 per month for two more years, before eventually coming to an end in the year 2019. The District Court nowhere addresses why 19 years of maintenance is economically necessary. Thus, we are left no choice but to conclude that the court fixed this term only because, as it said, "A reasonable period of time for Husband to pay maintenance is a term equal to the length of the marriage…." However, tying the amount of time that maintenance must be paid solely to the time the marriage lasted, without considering the length of time that maintenance is economically necessary, is improper. The duration of the marriage cannot preclude consideration of other factors listed in § 40-4-203(2) in fixing the term during which maintenance must be paid. *Lundvall*, 241 Mont. at 175-76, 786 P.2d at 12-13.

¶35 We also remand to the District Court for further consideration of the term during which maintenance is to be paid.

## ISSUE FOUR

¶36 Did the District Court err by awarding Jeri retroactive maintenance?

¶37 Lou argues the District Court erred when it awarded Jeri maintenance retroactive to more than three years before the commencement of the parties' dissolution action.

10

According to Lou, although a district court has statutory authority to order temporary retroactive maintenance during the dissolution proceedings, there is no corresponding authority to award permanent retroactive maintenance as the court did in the present case.

¶38    Jeri responds by arguing that the statutory requirements for maintenance under an interim order differ from those of a final order. According to Jeri, while temporary maintenance may commence no sooner than the filing of the motion for temporary maintenance, no such limitation exists for maintenance ordered to be paid after the decree is entered.

¶39    There is statutory authority for a district court to award temporary maintenance retroactive to the time a petition for such is filed.  Section 40-4-121(1), MCA.  However, § 40-4-203, MCA, makes no reference to an award of maintenance commencing before a petition is filed.  Nor is there Montana precedent stating that retroactive maintenance may be awarded in a final decree.

¶40    Title 40, chapter 4 of the Montana Code Annotated is based on the Uniform Marriage and Divorce Act.  *See In re Parenting of D.A.H.*, 2005 MT 68, ¶ 8, 326 Mont. 296, ¶ 8, 109 P.3d 247, ¶ 8; *In re Marriage of Harris*, 2006 MT 63, ¶ 21, 331 Mont. 368, ¶ 21, 132 P.3d 502, ¶ 21.  Missouri Revised Statute § 452.335 is also modeled after the Uniform Marriage and Divorce Act and sets forth essentially the same requirements for an award of maintenance as § 40-4-203, MCA.  Missouri appeals courts have held that "as a matter of law, a maintenance award entered pursuant to section 452.335 cannot be made retroactive." *Anderson v. Anderson*, 55 S.W.3d 444, 445 (Mo. App. E.D. 2001) (citation omitted); *see also In re Marriage of Lindeman*, 140 S.W.3d 266, 276 (Mo. App. S.D. 2004) (citation omitted).

This is because Missouri's statute, "speaks prospectively, not retrospectively; therefore, a maintenance award ordered in the judgment of dissolution cannot be made retroactive." *Lindeman*, 140 S.W.3d at 276 (quoting *Colquitt v. Muhammad*, 86 S.W.3d 144, 148 (Mo. App. 2002). Thus, Missouri courts have concluded that maintenance ordered in the judgment of dissolution cannot be made retroactive. *See Lindeman*, 140 S.W.3d at 276. Like Missouri's statute, § 40-4-203, MCA, speaks prospectively, not retrospectively. We conclude that the Missouri courts' analysis is well reasoned and logical.

¶41 Furthermore, this Court will not read into a statute something that is not there. *Strzelczyk v. Jett*, 264 Mont. 153, 157, 870 P.2d 730, 732 (1994) (citing *State ex rel. Neuhausen v. Nachtsheim*, 253 Mont. 296, 833 P.2d 201 (1992)). Our function as an appellate court is to ascertain and carry out the Legislature's intent by looking at the plain meaning of the words in the statute. *Strzelczyk*, 264 Mont. at 157, 870 P.2d at 732-33, citing *State ex rel. Roberts v. Pub. Serv. Commn.*, 242 Mont. 242, 790 P.2d 489 (1990). Nothing in § 40-4-203, MCA, contemplates maintenance which is ordered to commence over three years before the petition is filed. The District Court erred in ordering maintenance to commence prior to the time the petition was filed.

## CONCLUSION

¶42 We reverse the District Court and remand for further consideration consistent with this Opinion.

/S/ JOHN WARNER

12

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE