# FILED

June 20 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0247

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 224

IN THE MATTER OF THE ESTATES OF
LOUISA ANN SWANSON and
SWEN PAUL SWANSON,

         Decedents.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DP 03-108,
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Steven T. Potts; Thompson, Potts & Donovan, P.C.,
                Great Falls, Montana

        For Appellee:

                Michael G. Moses; Moses and Lansing, P.C., Billings, Montana

Submitted on Briefs:  January 23, 2008

Decided:  June 20, 2008

Filed:

_____
                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Gene Swanson, the personal representative of the estates of Louisa Ann Swanson and Swen Paul Swanson, moved the District Court to forfeit Jeanette Swanson's interest in the estates. The District Court granted the motion. Jeanette Swanson appeals. We reverse and remand.

¶2 Jeanette raises three issues on appeal, which we re-characterize as follows:

¶3 **Did the District Court err in concluding, as a matter of law, that Jeanette forfeited her right to inherit from the children's estates under § 72-2-813, MCA?**

¶4 *1. Does the fact that Jeanette pled guilty to the charges of deliberate homicide in a previous criminal case conclusively establish that she killed the children "feloniously and intentionally" for purposes of § 72-2-813, MCA?*

¶5 *2. Do § 72-2-813(7) and § 72-2-813(10), MCA, read together, create a statutory presumption that conclusively establishes that Jeanette acted "feloniously and intentionally"?*

### BACKGROUND

¶6 Jeanette Swanson ("Jeanette") shot and killed two of her children, Louisa Ann and Swen Paul. Immediately afterwards, Jeanette called 911 to report that she shot the children. Jeanette was charged with two counts of deliberate homicide, pursuant to § 45-5-102(1), MCA. She pled guilty to both counts.

¶7 As part of the pre-sentencing investigation report (PSI), Jeanette underwent a series of psychological examinations. All of the doctors agreed that she was suffering from a severe mental disorder; specifically, she was diagnosed with schizoaffective

2

disorder, which ran in her family, as well as agnosia, depression, and psychosis. The doctors also agreed that she had been suffering from this mental illness for quite some time—well before the crimes were committed. Jeanette suffered from the delusion that someone in the Augusta area wanted to harm her children. In the days before the shootings, her hallucinations and delusions intensified. Jeanette believed she had to shoot the children in order to protect them from this impending and imminent harm. She believed that by shooting them, she was sending them to heaven where they would be safe. Since the time of the shooting, Jeanette has consistently maintained that she killed the children to protect them.

¶8 At the sentencing hearing, the State recommended that Jeanette be sentenced under § 46-14-312, MCA. This section provides that defendants suffering from a mental disease or defect may be committed to the custody of the director of the department of public health and human services for treatment in lieu of imprisonment. The State conceded that:

> [T]he evidence before the Court is that we have really no choice but to believe she was mentally ill at the time these crimes were committed, and that as a product of that mental illness she was unable either to appreciate the criminality of her actions or to conform her conduct to the requirements of the law.

The District Court agreed, and for each count of deliberate homicide, committed Jeanette to the custody of the director of the department of public health and human services for placement and treatment at the state hospital for the term of her natural life.

¶9 Gene Swanson ("Gene"), the children's father, served as the personal representative for Louisa Ann's and Swen Paul's estates. Gene petitioned the District

3

Court to forfeit Jeanette's interest in the children's estates, pursuant to § 72-2-813, MCA. Section 72-2-813(2), MCA, provides that one who "feloniously and intentionally kills" another may not inherit from the decedent's estate. The District Court granted the petition and found that as a matter of law Jeanette had forfeited her rights of inheritance to the children's estates. Jeanette appeals this order.

## STANDARD OF REVIEW

¶10    We review a district court's interpretation and application of a statute for correctness. *In re Estate of Kuralt*, 2001 MT 153, ¶ 11, 306 Mont. 73, ¶ 11, 30 P.3d 345, ¶ 11.

## DISCUSSION

¶11    **Did the District Court err in concluding, as a matter of law, that Jeanette forfeited her right to inherit from the children's estates under § 72-2-813, MCA?**

¶12    Gene invokes § 72-2-813, MCA, Montana's "slayer statute," to prevent Jeanette from inheriting or otherwise benefiting from her deceased children's estates. Section 72-2-813(2), MCA, provides in relevant part:

> An individual who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate, including an intestate share, an elective share, and omitted spouse's or child's share, a homestead allowance, exempt property, and a family allowance. If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed the killer's intestate share.

This section is part of the Uniform Probate Code, substantially revised in 1990, and adopted by the Legislature in 1991. Section 72-2-813(2), MCA; Unif. Probate Code § 2-803, 8 U.L.A. 211 (1998). This statute codifies the long-standing common law principle

4

that a killer should not profit from his own wrongdoing. *See e.g. In re Marriage of Kotecki*, 2000 MT 254, ¶ 14, 301 Mont. 460, ¶ 14, 10 P.3d 828, ¶ 14. Section 72-2-813(2), MCA, provides that a slayer who "feloniously and intentionally" kills another may not take from the decedent's estate. Thus, the statute would not apply to accidental manslaughter. Similarly, the plain language of the statute excludes slayers who lack the requisite intent and homicides that are not "felonious."

¶13 On appeal, Jeanette argues that the District Court erred as a matter of law by giving conclusive effect to her guilty plea in the previous criminal case and by extending the presumption found in § 72-2-813(7), MCA, beyond the plain language of the statute.

¶14 *1. Does the fact that Jeanette pled guilty to the charges of deliberate homicide in a previous criminal case conclusively establish that she killed the children "feloniously and intentionally" for purposes of § 72-2-813, MCA?*

¶15 The District Court's order summarily denied Jeanette the right to inherit by treating her guilty plea as conclusive evidence that she "feloniously and intentionally" killed her children:

> To be convicted of deliberate homicide, the person must have purposely or knowingly caused the death of another human being. Section 45-5-102(1)(a), MCA. . . . The language in these statutes could not be more clear. Jeanette Swanson pled guilty to deliberate homicide and admitted that she purposely killed her children. The conviction is conclusive. She, therefore, as a matter of law has forfeited her rights of inheritance and benefits related to her children's estates.

The District Court's conclusion effectively precluded Jeanette from litigating two issues in this civil case: whether she acted with the requisite intent, and whether the killings

5

were felonious. However, the District Court neglected to analyze whether it was appropriate to apply the doctrine of collateral estoppel to either issue in this case.

¶16 We have previously considered whether a guilty plea in a prior criminal case has preclusive effect on a subsequent civil suit, and have stated that "[t]he law in Montana on this issue could not be more clear." *Safeco Ins. Co. of America v. Liss*, 2000 MT 380, ¶ 46, 303 Mont. 519, ¶ 46, 16 P.3d 399, ¶ 46. We only recognize the applicability of collateral estoppel where:

> (1) [T]he issue decided in the prior adjudication is identical with the one presented in the action in question;
>
> (2) there was a final judgment on the merits; and
>
> (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.

*Safeco*, ¶ 46. In *Safeco*, as in the instant case, the District Court gave conclusive effect to a guilty plea without "expressly addressing the issue of collateral estoppel." *Safeco*, ¶ 45.

¶17 *Safeco* is squarely on point with the case at bar. In *Safeco*, we considered the issue of whether a *nolo contendere* guilty plea in a criminal case collaterally estopped the defendant from litigating the issue of intent in a subsequent civil case. *Safeco*, ¶ 45. The defendant Liss had been charged with aggravated assault for shooting a woman. *Safeco*, ¶ 9. Liss entered a *nolo contendere* guilty plea, all the while maintaining she shot the woman by accident. *Safeco*, ¶ 9. Safeco argued that Liss's guilty plea prevented her from claiming that the shooting was unintentional in the subsequent civil suit. *Safeco*, ¶ 16.

¶18    We emphatically rejected Safeco's argument, and held that "a guilty plea as a matter of law fails the second prong of the three-part [collateral estoppel] test, because a guilty plea does not constitute a judgment on the merit. . . .  Liss's *nolo contendere* guilty plea to aggravated assault carries no collateral estoppel effect in the civil proceedings. . . . Whether Liss acted intentionally or committed an illegal act has therefore not been determined as a matter of law." *Safeco*, ¶¶ 48, 51.

¶19    Our holding in *Safeco* is not distinguishable, as Gene suggests, simply because it concerns insurance benefits rather than an inheritance.  The identical issue is presented in both *Safeco* and the instant case: whether a guilty plea in a prior criminal case precludes the accused from litigating the issue of intent in a subsequent civil case.  Nothing in our analysis of this issue is specific or limited to insurance law.

¶20    Nor is our holding in *Safeco* limited to cases involving *nolo contendere* pleas.  In *Safeco*, we cited Chief Justice Traynor's opinion in *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 375 P.2d 439 (Cal. 1962), to explain the public policy underlying this rule:

> When a plea of guilty has been entered in the prior action, no issues have been drawn into controversy by a full presentation of the case.  It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation.  Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action.

*Safeco*, ¶ 49 (citing *Teitelbaum*, 375 P.2d at 441 (citations and internal quotations omitted)).

7

¶21 The importance of the distinction Chief Justice Traynor draws between a guilty plea and a guilty verdict cannot be overstated. When a criminal defendant enters a plea of guilty to the charge of deliberate homicide, the issues of whether a killer acted with intent and whether the killing was felonious are not "established" through litigation. By contrast, when a defendant undergoes a bench or jury trial, these elements are proven beyond a reasonable doubt. A guilty verdict establishes these elements, but a guilty plea does not. Thus, a guilty verdict has a conclusive effect for the purposes of the slayer statute that a guilty plea does not.

¶22 This distinction between a guilty verdict and a guilty plea is recognized by the Legislature in § 72-2-813(7), MCA, which provides:

> After all right to appeal has been exhausted, a judgment of conviction *establishing criminal accountability* for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section.

Section 72-2-813(7), MCA (emphasis added). The Legislature has defined "conviction" to include either a plea or a verdict from a jury or court of competent jurisdiction. Section 46-1-202(7), MCA. However, not all convictions satisfy the requirements of § 72-2-813(7), MCA. Rather, the Legislature has specifically stated that only a "judgment of conviction *establishing criminal accountability*" may conclusively establish the convicted individual as the killer for the purposes of the slayer statute. Section 72-2-813(7), MCA (emphasis added). The language in this section distinguishes between a conviction obtained through a plea, and a conviction obtained by a verdict after a jury or bench trial. As discussed above, a guilty plea does not establish, in an evidentiary sense,

criminal accountability for a felonious and intentional killing. As a result, under the plain language of § 72-2-813(7), MCA, a guilty plea does not conclusively establish that a killer acted feloniously and intentionally for the purposes of the slayer statute.

¶23 The case at bar illustrates the purpose of distinguishing a guilty plea from a guilty verdict. As Chief Justice Traynor noted, *Teitelbaum*, 375 P.2d at 441, it is difficult to discern a defendant's motive for pleading guilty. Jeanette pled guilty to the shootings, but all the while maintained that she intended to protect the children, not to hurt them. Jeanette's guilty plea may have been a strategic decision, or perhaps even a choice to spare her family the added trauma of a public trial. Due to the fact that she entered a guilty plea, the issues of whether she intended to kill the children and whether the killings were felonious were never fully examined at trial.

¶24 In sum, we conclude that there has not been a trial resulting in a final judgment on the merits of whether Jeanette acted "feloniously and intentionally" when she shot her children. Thus, her guilty plea in the previous criminal action does not preclude her from raising these issues in the instant civil case.

¶25 *2. Do § 72-2-813(7) and § 72-2-813(10), MCA, read together, create a statutory presumption that conclusively establishes that Jeanette acted "feloniously and intentionally"?*

¶26 Gene next argues that the statutory presumption found in § 72-2-813(7), MCA, conclusively establishes that Jeanette acted feloniously and intentionally:

> After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing

9

of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section.

Section 72-2-813(7), MCA. He reaches this interpretation of the statute by reading § 72-2-813(7), MCA, together with § 72-2-813(10), MCA. Section 72-2-813(10), MCA, provides that "[f]or the purposes of this section, a felonious and intentional killing includes a deliberate homicide as defined in 45-5-102 and a mitigated deliberate homicide as defined in 45-5-103." Gene argues that, read together, these subsections establish a conclusive presumption that one who has been convicted of deliberate homicide is presumed to have acted feloniously and intentionally for the purposes of this section.

¶27   We disagree. The Official Comment to § 72-2-813(7), MCA, clearly expresses the purpose of the section's presumption:

> Subsection (g) [72-2-813(7)] leaves no doubt that, for purposes of this section, a killing can be "felonious and intentional," whether or not the killer has actually been convicted in a criminal prosecution. Under subsection (g) [72-2-813(7)], after all right to appeal has been exhausted, *a judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the conflicted individual as the decedent's killer for purposes of this section.* Acquittal, however, does not preclude the acquitted individual from being regarded as the decedent's killer for purposes of this section.

Section 72-2-813(7), MCA cmt. (emphasis added). The section's purpose is to establish that a killer may be barred civilly from inheriting under this statute even if he or she was acquitted in a criminal proceeding.

¶28   In doing so, the Legislature has expressly rejected the logic of some of our sister states, who have held that the acquittal of a killer bars the application of the slayer statute.

10

*See e.g. Turner v. Estate of Turner*, 454 N.E.2d 1247 (Ind. App. 1 Dist. 1983). Instead, the Legislature has set forth a clear statutory directive: if there has been a judgment of conviction *which establishes criminal accountability for the felonious and intentional killing of the decedent,* the convicted individual is presumed to be the killer for the purposes of this section. In the absence of such a conviction, "the court, upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent." Section 72-2-813(7), MCA. The § 72-2-813(7), MCA, presumption only pertains to those cases where, as a result of litigation, a conviction has established a killer's criminal responsibility for the felonious and intentional killing of another. If a killer's criminal accountability for these issues has not yet been established through litigation, the section explicitly directs the courts to consider the issues of intent and whether the killing was felonious in a civil proceeding.

¶29   Similarly, the purpose of the statutory caveat found in § 72-2-813(10), MCA, is to distinguish Montana's slayer statute from those in other states, where courts have narrowly interpreted slayer statutes to apply only where the homicide is deliberate and unmitigated. *See e.g. Quick v. United Benefit Life Ins. Co.*, 213 S.E.2d 563, 568 (N.C. 1975) (noting that the slayer statute does not apply to justifiable or excusable homicide). The plain language of our statute provides that a "felonious and intentional killing" may include both a deliberate homicide and a mitigated deliberate homicide. Section 72-2-813(10), MCA. Gene, however, apparently interprets the statute to mean that all deliberate homicides are "felonious and intentional killings" for the purposes of the slayer

11

statute. Nothing in the plain language of the statute supports this reading, and Gene has not advanced any other authority in support of his interpretation.

¶30 Gene's strained interpretation of this statute implicates the identical arguments raised and rejected in Part 1 of this opinion, and for that reason, must fail. As discussed above, we conclude that § 72-2-813(7), MCA, makes a purposeful distinction between homicide convictions based on guilty pleas and those based on jury or bench trial verdicts. When, as here, a defendant enters a plea of guilty, the issues of whether the killing was "intentional" and "felonious" have not been tried and established. Nothing in § 72-2-813(7), MCA, or § 72-2-813(10), MCA, read together or alone, would permit a court to presume that a guilty plea to a deliberate homicide charge conclusively establishes that the killing was "intentional" and "felonious" for the purposes of this section.

¶31 On remand, Gene has the burden of proving that Jeanette acted "intentionally" and "feloniously" for the purposes of § 72-2-813, MCA. We take this opportunity to note the difference between the term "feloniously" as it is used in § 72-2-813, MCA, and the statutory definition of a felony set forth in § 45-2-101(23), MCA. Section 45-2-101(23), MCA, defines a "felony" as "an offense in which the sentence imposed upon conviction is death or imprisonment in a state prison for a term exceeding 1 year." Section 45-2-101(23), MCA. Technically, Jeanette was not sentenced to any prison time. If courts were to measure whether a killer acted "feloniously" for purposes of § 72-2-813, MCA, by whether or not the killer's sentence comported with the definition of "felony" found in

12

§ 45-2-101(23), MCA, then the slayer statute could not be applied to any killer who was not sentenced to death or imprisoned for more than a year.

¶32 Other states to grapple with this question have noted that, in the specific context of the slayer statutes, the term "feloniously" has been historically construed as a synonym for "unlawful" or "wrongful." *See e.g. Matter of Estates of Josephson*, 297 N.W.2d 444, 448 (N.D. 1980). Several of our sister states have refused to presume that a killer acted "feloniously" simply because the homicide was statutorily classified as a felony. *See e.g. Ford v. Ford*, 512 A.2d 389, 398 (Md. 1986) ("Fundamentally, a killing is 'felonious' when the homicide is a felony. In the frame of reference of the slayer's rule, however, the legislative policy regarding criminal responsibility leads to a qualification of this meaning. We believe that for a homicide to be 'felonious' in the context of the slayer's rule, it must be a felony for which the killer is criminally responsible under Maryland's criminal insanity test. Therefore, if a killer is 'insane' at the time he killed, the killing is not felonious in the contemplation of the slayer's rule. If the killing is not felonious, even though it may be intentional, the rule does not apply."); *Dowdell v. Bell*, 477 P.2d 170, 172 (Wyo. 1970) ("Such contention by reliance on comparative definitions of words which are not truly analogous avoids coming to grips with the real problem and cannot be accepted."); *Rosenberger v. Northwestern Mutual Life Ins. Co.*, 176 F. Supp. 379, 382 (D. Kan. 1959), *modified by*, 182 F. Supp. 633 (D. Kan. 1960) ("It is obvious from the many definitions attributed to the word 'feloniously' that the manner in which a court defines it in one instance will not control the definition to be applied in a different situation.").

¶33 Like Montana, North Dakota's slayer statute is derived from § 2-803 of the Uniform Probate Code. N.D. Cent. Code § 30.1-10-03 (2007); Unif. Probate Code § 2-803, 8 U.L.A. 211 (1998). In a recent decision interpreting § 2-803(b),[1] the North Dakota Supreme Court explicitly rejected the notion that the term "feloniously" encompassed only those intentional acts statutorily designated as felonies. *Matter of Estates of Josephson*, 297 N.W.2d at 448. Instead the court defined the term more broadly, and held that in the specific context of the slayer statute, the term "feloniously" "refers to a killing that is wrongful, that is without legal excuse or justification." *Matter of Estates of Josephson*, 297 N.W.2d at 448. This definition of "feloniously" comports with the construction we have given to the term in prior cases. *See e.g. State v. Souhrada*, 122 Mont. 377, 385, 204 P.2d 792, 797 (1949) (defining "felonious" to mean "an act which is done with a mind bent on doing wrong") (citing *State v. Rechnitz*, 20 Mont. 488, 52 P. 264 (1898)). We conclude that for purposes of § 72-2-813, MCA, the definition of the term "feloniously" is not limited to the definition of "felony" set forth in § 45-2-101(23), MCA, but includes all killings "done with a mind bent on doing wrong."

¶34 Finally, on remand, Gene also has the burden of proving that Jeanette acted with the requisite intent under § 72-2-813, MCA. Evidence of Jeanette's guilty plea is admissible on the independent ground that it is an admission, but it may not be given conclusive effect. *See e.g. Teitelbaum*, 375 P.2d at 441. In considering whether Jeanette

---

[1] Codified in North Dakota at N.D. Cent. Code § 30.1-10-03(2) (2007), and in Montana at § 72-2-813(2), MCA.

14

was capable of forming the requisite intent, the District Court must take into account the evidence concerning Jeanette's mental condition, as required by § 46-14-101(1), MCA.

## CONCLUSION

¶35 In sum, we hold that the District Court erred by concluding, as a matter of law, that Jeanette was precluded from inheriting from her children's estates. A guilty plea to a charge of deliberate homicide does not create a presumption that a killer acted "feloniously and intentionally" for the purposes of the slayer statute. We draw no conclusions today as to whether or not Jeanette is entitled to inherit from her children's estates in this civil proceeding. That determination will be made by the District Court, which, on remand, must consider whether Jeanette acted "feloniously and intentionally" for the purposes of § 72-2-813, MCA. Thus, we reverse and remand for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

15

Justice Jim Rice, dissenting.

¶36 I believe the Court makes several analytical errors in resolving this appeal. First, the Court states that § 72-2-813(7), MCA, "distinguishes between a conviction obtained through a plea, and a conviction obtained by a verdict after a jury or bench trial." Opinion, ¶ 22. I submit that a reading of the plain language reveals no such distinction:

> After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section.

Section 72-2-813(7), MCA. A "judgment of conviction" which satisfies this provision makes the slayer statute operative, whether that judgment is premised upon a guilty plea or trial verdict.

¶37 This error in the reading of the statute leads the Court to analyze at length the preclusive effect of a guilty plea in a later civil suit, and the application of the law of collateral estoppel. All of this is irrelevant. Application of the general law of collateral estoppel is unnecessary because, if the slayer's judgment of conviction satisfies the slayer statute, then the slayer's claim is estopped by the statute itself.

¶38 Analysis of the preclusive effect of a guilty plea in a later civil action does not help, either. Jeanette did indeed enter a guilty plea to the charge of deliberate homicide. That charge satisfies the requirement of a "felonious and intentional" killing because it is a felony with an intentional mental state. This is confirmed by § 72-2-813(10), MCA: "For the purposes of this section, a felonious and intentional killing includes a deliberate

16

homicide as defined in 45-5-102 . . ."[1] However, there is more involved here than merely a guilty plea to the charge. Jeanette was thereafter sentenced for this felonious and intentional crime, judgment was entered against her for the crime, and she did not challenge this judgment by appeal. At that point, a "judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent" against Jeanette became final. Section 72-2-813(7), MCA.

¶39 The slayer statute then provides that "[a]fter all right to appeal has been exhausted" from such a judgment, the judgment of conviction of this crime "conclusively establishes the convicted individual as the decedent's killer for purposes of this section." Section 72-2-813(7), MCA. Jeanette should thus be foreclosed from pursuing her claims against her children's estates as a matter of law.

¶40 I believe the Court has gone far afield in its analysis and failed to apply the plain language of the statute. I would affirm the District Court.

/S/ JIM RICE

---

[1] The Court's extensive analysis of what constitutes a "felony" is likewise unnecessary under the facts of this case. The slayer statute clearly incorporates the charge at issue.